646 So.2d 343 (1994)
In re James F. QUAID.
No. 94-B-1316.
Supreme Court of Louisiana.
November 30, 1994.
Rehearing Denied February 16, 1995.
*344 Orlando N. Hamilton, Jr., Oak Grove, John T. Seale, Jr., G. Fred Ours, New Orleans, for applicant.
Joseph N. Marcal, III, New Orleans, James F. Quaid, Jr., Metairie, for respondent.
DENNIS, Justice.[*]
The Disciplinary Board of the Louisiana State Bar Association has brought charges against Respondent James F. Quaid arising from his representation of Johnnie E. Parker before the Social Security Administration ("SSA") in a claim for disability benefits. In connection with that representation, the SSA charged Respondent with violating federal regulations governing the collection of attorney's fees. Following an administrative hearing conducted by the SSA, Respondent was found guilty of charging excessive and unauthorized fees and misrepresenting material facts to the SSA and was barred from further practice before the SSA.

FACTS
Respondent commenced representing Mr. Parker in the spring of 1985 in connection with Mr. Parker's claim for renewed disability benefits following their termination by the SSA. Respondent had previously represented Mr. Parker, to an extent not ascertainable in this record, in litigation brought by his former wife, Ruth Lambert Nunez, to collect child support. Following a change in the law that voided the SSA's initial denial of renewed benefits, Mr. Parker was found to be disabled. He and his beneficiaries were awarded benefits retroactive to May 1984.
The SSA has promulgated regulations governing representation before it and the fees that may be charged for such representation. These regulations provide in pertinent part as follows:
20 C.F.R. § 404.1720 Fee for a representative's services.
(a) General. A representative may charge and receive a fee for his or her services as a representative only as provided in paragraph (b) of this section.
(b) Charging and receiving a fee. (1) The representative must file a written request with us before he or she may charge or receive a fee for his or her services.
(2) We decide the amount of the fee, if any, a representative may charge or receive.
(3) A representative shall not charge or receive any fee unless we have approved it, and he or she shall not charge or receive any fee that is more than the amount we approve. This rule applies whether the fee is charged to or received from you or from someone else.
* * * * * *
20 C.F.R. § 404.1740 Rules governing representatives.
No attorney or other person representing a claimant shall
* * * * * *
(b) Knowingly charge or collect, or make any agreement to charge or collect, directly or indirectly, any fee in any amount in excess of that allowed by us or by the court;
(c) Knowingly make or participate in the making or presentation of any false statement, representation, or claim about any material fact affecting the rights of any person under title II of the Act;
* * * * * *
On June 25, 1986, the SSA sent Respondent a Notice to Representative of Claimant Before the Social Security Administration. This notice informed Respondent that under law he was required, after completion of his *345 representation, to petition the SSA for approval of any fee he sought for his services and that, as an attorney representative, he could receive direct payment from the SSA of up to 25 percent of past-due benefits awarded.
Following the determination of Mr. Parker's disability, in accordance with federal regulations, the SSA reserved certain amounts of the retroactive benefits payable to Mr. Parker and his beneficiaries pending its authorization of attorney's fees. Out of the $21,811.53 in retroactive benefits payable to Mr. Parker personally, the SSA retained $6,985.47. Out of the $7,464.00 payable to Mr. Parker's adopted children from his second marriage, the SSA withheld $2,160.00. Out of the $10,191.00 payable to Ruth Lambert on behalf of Mr. Parker's children from his first marriage, the SSA withheld $3,069.00. By award letters dated March 22, 1987 and June 20, 1987, Mr. Parker was informed of the lump sum payments awarded to him and his adopted children and of the amounts withheld pending determination of attorney's fees. Ruth Lambert was similarly informed by letter dated June 20, 1987 of the lump sum payment awarded her children and the amounts withheld pending the award of attorney's fees. The award letters all stated that attorney's fees were subject to a 25 percent cap, that the claimant's representative had to petition to obtain a fee, and that any fee awarded had to be approved by the SSA. The SSA sent copies of these award letters to Respondent.
On June 25 and July 3, 1987, Respondent wrote the SSA directing it to release the amounts withheld in connection with the benefits payable to Mr. Parker and his adopted children, stating that "[a]rrangements have been made directly with the claimant." On July 3, 1987, Respondent also filed a form petition to obtain approval of a fee "only in so far as Ruth Lambert for the children of Johnnie E. Parker is concerned." The petition sought a fee of $3,069.00. It further stated that payment was expected from an escrow or trust account holding $3,069.00[1] and that Respondent would or had charged $3,500.00 in connection with related matters before State or Federal Court. Attached to the fee petition was a time sheet, captioned "Client: Johnnie E. Parker, SSN XXX-XX-XXXX," detailing some 106 hours of professional time purportedly spent on this matter.
On September 9, 1987, the SSA sent Mr. Parker a letter, copied to Respondent, informing him that it would soon mail him a check in the amount of $6,985.47 in payment of an amount previously due or withheld. There is no comparable letter in the record regarding release of the $2,061.00 withheld in connection with the benefits payable to Mr. Parker's adopted children, which Respondent had directed the SSA to release to Mr. Parker. However, the sum of the amounts withheld in the two claims equals $9,145.47.
On September 16, 1987, Mr. Parker issued Respondent a check for $9,145.47, purportedly in compromise of a bill, dated September 15, 1987, for professional services by Respondent in connection with "Social Security Hearings 34th JDC Parker v. Parker No. 44-095."
On November 12, 1987, Regional Chief Administrative Law Judge Helsper of the SSA authorized a fee of $2,500.00 for Respondent's services on behalf of Johnnie Parker in the disability claims. The authorization informed Respondent that he could request a review of the fee by sending a letter within 30 days to the Chief Administrative Law Judge. The authorization letter further stated:
The approved fee is for all services performed for the claimant and the family.
The amount of time charged for conferences, review, and research is not commensurate with the level of complexity of this case. I have also disallowed ¾ hour charged on June 25, 1987, relating to waiver of direct payment in this case. The *346 issues were not significantly complex, and the services rendered were routine in nature. Accordingly, I have reduced your requested fee to the amount shown above. Since Mr. Parker has deposited $3,069.00 in your trust account, a refund of $569.00 plus interest, if any, is due Mr. Parker. Please furnish this office with a copy of your check refunding the above amount to Mr. Parker.
A copy of the fee authorization was copied to Mr. Parker.
Respondent failed to do anything upon receipt of the authorization letter, either to challenge the amount awarded, to reimburse Mr. Parker, or to explain why he should not have to do so.
On January 30, 1989, the Office of Special Counsel for the SSA wrote Respondent stating that the SSA was informed that Mr. Parker had paid Respondent $9,145.47 and had received no refund from Respondent of any amount in excess of the authorized fee of $2,500.00. The letter also stated that documentation submitted to the SSA indicated that Respondent had violated section 206(a) of the Social Security Act and 20 C.F.R. § 404.1740 in that the documents reflected that Respondent's fee petition contained material misrepresentations and showed that Respondent had retained an unauthorized fee of $6,645.47. The letter directed Respondent to refund within 30 days the sum of $6,645.47 to Mr. Parker, with proof to the SSA, or respond with a satisfactory explanation for Respondent's conduct; otherwise, Respondent would face the initiation of suspension/disqualification proceedings and possible criminal charges.
In May 1989, the SSA charged Respondent with violating section 206(a) of the Social Security Act (42 U.S.C. § 406(a)) and implementing regulations, 20 C.F.R. 404.1740(b) and sought his disqualification from further representation of claimants before the SSA. Although Respondent initially failed to respond to the SSA complaint, he ultimately submitted a verified and notarized answer stating that in each of the individual claims before the SSA for Johnnie Parker and his children, Respondent had requested and received authorization of payment from the SSA, and that the $9,145.47 he received from Mr. Parker was in payment of these authorized fees. Respondent alleged that, although he retained no proof of this in his files, documentation in the files of the SSA would corroborate his claims. In subsequent filings with the SSA, Respondent stated that he was never paid the $9,145.47 due for the SSA matters, but that the amount merely "provided a basis of compromise between Respondent and Johnny [sic] Earl Parker as to the payments, not only for services rendered before the Social Security Administration, but particularly for the services rendered by Respondent" in connection with the child support litigation.
An administrative hearing regarding the SSA charges was held on May 14-15, 1990, at which time Respondent was given the opportunity to be represented by counsel, to present evidence and to cross-examine witnesses. At the hearing, Respondent testified on direct that his conduct in obtaining fees for the SSA matters was based on extensive telephone conversations with an employee of the SSA, Mrs. Price, regarding how to obtain his fees and that the fee Judge Helsper approved was only based on documentation submitted with respect to the claim on behalf of Ruth Lambert's children. On cross-examination, Respondent testified that he had made arrangements with Mr. Parker that his other legal fees would be paid out of the SSA benefits and that the $13,000 bill was for services provided before the SSA and in the state-court child support matters. In contrast to the defense set forth in his answer to the SSA complaint, Respondent admitted that he never intended to petition the SSA for fees in connection with the claims made on behalf of Mr. Parker and his adopted children, as he understood the SSA's practice of withholding funds for attorney's fees to be intended to protect the attorney's interests, and this was only necessary with respect to the payments due Ruth Lambert's children. Respondent further testified that he could not distinguish between the professional time spent on SSA and non-SSA matters, but that the $3,500.00 set forth in his fee petition to the SSA was based on an "arbitrary breakdown" of what was due for services rendered *347 in connection with the domestic litigation against Ruth Lambert. In addition, Respondent testified that he had discussed the fee situation with Judge Helsper in February 1988, in connection with the 1987 award letter, and that the judge had told him not to worry about the confusion over fees and that he would look into the matter. In response to questions by the administrative law judge presiding at the hearing, Respondent explained the discrepancy between his testimony at the hearing and his verified pleadings regarding the authorization of fees as the result of reading the pleadings too fast. He further stated that it was not until he was answering the charges brought against him by the SSA that he understood he should have sought approval of his fees but that nonetheless, no money had been refunded to Mr. Parker and no petition for fees had been filed. The only thing that he and his attorney had contemplated doing was suing Mr. Parker, Donna Parker and Ruth Nunez. Finally, Respondent testified that he had previously been disbarred and reinstated by the Louisiana State Bar Association, but had not been subjected to any other disciplinary actions, even though Respondent had previously received formal private reprimands from the Louisiana Bar Association in 1970 and 1987.
Following the hearing and the submission of post-hearing briefs by the parties, the Administrative Law Judge found that Respondent had violated 20 C.F.R. § 404.1720(b)(1) and (3) and 20 C.F.R. § 404.1740(b) and (c), and disqualified him from further representation before the SSA. The decision was affirmed by the SSA Appeals Council.
Upon learning of Respondent's disqualification before the SSA, the Louisiana State Bar Association charged Respondent with violating the following Rules of Professional Conduct: Rule 1.3 (Diligence), Rule 1.4 (Communication), Rule 1.5 (Fees), Rule 1.15 (Safekeeping Property), Rule 1.16(d) (Declining or Terminating Representation), Rule 3.3(a)(1) & (4) (Candor Towards the Tribunal) and Rule 8.4(a)(b)(c) & (d) (Misconduct). The Board also charged Respondent with violating 20 C.F.R. 404.1720(b), 404.1740(b) and 404.1740(c) governing the collection of fees for representation before the Social Security Administration.
Following briefing by the parties, a disciplinary hearing was conducted on August 17, 1993. Disciplinary Counsel, over Respondent's objections, submitted the entire certified copy of the SSA proceedings as its case in chief. In defense, Respondent testified on his own behalf, but called no other witnesses. Respondent's testimony before the Committee was substantially the same as his earlier testimony before the administrative law judge in that he admitted that he had not filed fee petitions for fees due from Johnnie Parker and his adopted children's claims and that, although he could not have broken down the bill for his services between what he had done for Mr. Parker and his two sets of children, the payment of $9,145.47 was a compromise of the $13,000 bill for services in connection with the disability claims and other services over a number of years of representation. In response to questioning from the Committee, Respondent testified that at the time Judge Helsper awarded him the $2,500.00 fee, the judge did not know that Respondent had collected a $9,145.47 fee from Mr. Parker. However, Respondent insisted that the $2,500.00 fee award was only addressed to the claim for Ruth Lambert's children and did not cover the other claims. Moreover, when asked why he had not refunded any money to Mr. Parker following the SSA's directive to do so, Respondent explained that "It wasn't a judgment. The Social Security Administration didn't get a judgment against me to say refund X number of dollars or Y number of dollars.... I don't know if I'd have refunded Johnny Parker any money." Additionally, Respondent testified that his claim for money in connection with the benefits paid Ruth Lambert's children was triggered by Mr. Parker's insistence, at the time he and Respondent "compromised" the $13,000 bill, that Respondent go after his former wife for the remaining money, even though Respondent had filed a petition for fees from the Lambert award two months before he drafted and submitted the $13,000 bill to Mr. Parker.
*348 The Hearing Committee found that Respondent had violated all three sections of the Code of Federal Regulations pertaining to the charge of an unauthorized and excessive fee in a matter before the SSA, as well as violating Rule 1.5, Rule 3.3(a)(1) and (4), and Rule 8.4(a)(b)(c) and (d) of the Rules of Professional Conduct, but that Disciplinary Counsel had not proven a violation of Rules 1.3, 1.4, 1.15 and 1.16. The Hearing Committee recommended that Respondent be disbarred. The Disciplinary Board disagreed somewhat with the Hearing Committee, finding that the record provided clear and convincing evidence that Respondent had violated Rule 1.4, Rule 1.5, Rule 1.15, Rule 3.3(a)(1) and (4) and Rule 8.4(a)(c) and (d), but not Rule 1.3, Rule 1.16(d) or Rule 8.4(b). The Disciplinary Board recommended a lengthy suspension as sanction.

MISCONDUCT
Bar disciplinary matters come within the original jurisdiction of this Court. La. Const. art. V, § 5(B). Consequently, we act here as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proved by clear and convincing evidence. LSBA v. Boutall, 597 So.2d 444 (La.1992), La.Sup.Ct.R. 19, § 18(C).[2]
Unlike a criminal conviction, the SSA's determination that Respondent violated federal law is not conclusive of Respondent's guilt as to those matters. See La.Sup. Ct.R. 19, § 19(E). Nonetheless, there is more than ample evidence in the record to support a finding, under the clear and convincing standard, that Respondent obtained an unauthorized and excessive fee in violation of 20 C.F.R. §§ 404.1720(b) and 404.1740(b). Respondent admitted before the SSA and the Disciplinary Hearing Committee that he failed to follow the procedure for obtaining an authorized fee from the SSA for his services in obtaining benefit payments to Mr. Parker and his adopted children, despite the clear explication in the Code of Federal Regulations and Respondent's receipt of numerous notifications detailing the fee collection process before the SSA. Moreover, Respondent received a fee in excess of the $2,500.00 fee ultimately authorized by the SSA. Even assuming that the $9,145.47 Respondent received from Mr. Parker properly included fees for services in the related state-court litigation, Respondent testified that he had estimated the total amount due for services in the other matters to be $3,500.00, as reflected in the fee petition he did file. Thus, at the very least, Respondent has received a fee exceeding by $3,145.47 the amount authorized by the SSA, and possibly has received some $6,645.47 in excess of his authorized fee.
Other than gross incompetence or carelessness, it is difficult to imagine an explanation for Respondent's conduct other than his decision to disregard the legal process in order to obtain a fee far in excess of what he was entitled to by law. Respondent moreover never sought to have his fee award re-evaluated and has failed to this date to remedy the situation by refunding any part of the monies owed Mr. Parker. In addition, his defense before both the SSA and the Hearing Committee consisted largely of uncorroborated, self-serving claims that lack credibility. *349 Finally, even assuming that he initially obtained payment from Mr. Parker in good faith, Respondent's failure to rectify or explain his error once it was drawn to his attention, despite explicit instructions to do so by the Regional Chief Administrative Law Judge and the SSA, demonstrates contempt for the rule of law and indicates that the violations were intentional rather than inadvertent.
Having found by clear and convincing evidence that Respondent charged an illegal fee under 20 C.F.R. §§ 404.1720(b) and 404.1740(b), it follows that he has charged an unreasonable fee in violation of Rule 1.5 of the Professional Rules of Conduct. See Succession of Wallace, 574 So.2d 348, 351 (La. 1991) (Rule 1.5 provides that a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee). Moreover, Respondent was able to collect an excessive and unauthorized fee from his client by failing to provide Mr. Parker accurate information regarding the limitations imposed on fees for services performed in connection with claims for social security disability benefits. Consequently, we find that Respondent has violated Rule 1.4(b) in failing to give Mr. Parker "sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued...." Rules of Professional Conduct, Rule 1.4(b); see Matter of Berl, 560 A.2d 1009 (Del.1989) (failure to inform client of statutory fee limitations a violation of Rule 1.4(b)).
We also find that the record contains sufficient evidence that Respondent made material false statements in documents submitted to and testimony given before the SSA, in violation of 20 C.F.R. § 404.1740(c), and consequently demonstrated a lack of candor to the tribunal in violation of Rule 3.3(a)(1) and (4), which prohibit an attorney from making false statements of material fact or law to a tribunal, or offering evidence the attorney knows to be false. The record is replete with inconsistencies. Perhaps the most glaring are Respondent's contradictory explanations of the legitimacy of the fees he obtained from Mr. Parker. In the verified answer Respondent filed with the SSA in response to its complaint, he stated that he had petitioned the SSA for and been awarded all the fees he collected, and that proof of this was readily available in the SSA's files an answer that, if true, would have fully exonerated Respondent from the SSA's charges. However, in testimony before the administrative law judge, Respondent admitted that he had not petitioned for the fees he claimed in connection with benefits awarded Mr. Parker and his adopted children, nor received authorization for the same, claiming that he was unaware that it was necessary for him to do so based on numerous conversations with an employee of the SSA. When asked by the Hearing Committee to explain this discrepancy, Respondent replied that he must have read his verified answer too quickly to realize its inaccuracya response that would render Respondent's notarized verification of the document itself a fraud on the tribunal and which in any event is belied by the claim made in the same pleading that the documents corroborating his defense were missing from Respondent's files but were available from the SSA. In addition, Respondent failed to disclose truthfully prior disciplinary proceedings brought against him. When asked by the administrative law judge whether he had been subjected to disciplinary matters by the Bar Association, Respondent stated that he had been the subject of only one proceeding in which he was disbarred for conviction of a felony in Georgia and subsequently reinstated. This answer was false. In addition to his disbarment for conviction of a felony, Respondent was twice given formal private reprimands by the Louisiana State Bar Association: in 1970 in connection with charging an excessive fee and failing to perform services, and in 1987 for failure to perform services and failure to withdraw from a case.
Having found that Respondent violated the Rules of Professional Conduct, we find that he is in violation of Rule 8.4(a). In addition, because Respondent's misconduct involves dishonesty, fraud, deceit or misrepresentation, and is prejudicial to the administration of justice, we find that Respondent additionally has violated Rule 8.4(c) and (d).
*350 A number of the charges brought against Respondent have not been proved by clear and convincing evidence. Rules 1.3 (Diligence) and 1.16(d) (Declining or Terminating Representation) are inapplicable on these facts. Disciplinary counsel, moreover, did not present any evidence that Respondent did or did not place the disputed fees in this case in a separate trust account, and therefore failed to prove that Respondent did not properly safekeep his client's property in violation of Rule 1.15. Finally, Respondent has not been charged with and convicted of committing a criminal act for his conduct in the social security matter, even though the SSA threatened him with possible criminal proceedings; consequently, we find that violation of Rule 8.4(b) has not been demonstrated.

SANCTIONS
The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely to properly discharge their professional duties to clients, the public, the legal system, and the legal profession. ABA Standards for Imposing Lawyer Sanctions, § 1.1 (1991); see also LSBA v. Amberg, 553 So.2d 448, 450 (La.1990); LSBA v. Drury, 455 So.2d 1387 (La.1984); LSBA v. O'Halloran, 412 So.2d 523 (La.1982). A court imposing sanctions for lawyer misconduct should consider (1) the ethical duty or duties the lawyer violated; (2) the lawyer's mental state related to his ethical violation; (3) the extent of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating circumstances. ABA Standards, § 3.0; LSBA v. Wilkinson, 562 So.2d 902, 904 (La.1990). To determine the appropriate sanction, we look to the recommended baseline set forth in the ABA Standards, as determined by the type of duty violated, the lawyer's mental state and the extent of the injury caused; and then adjust the sanction in accordance with the aggravating and mitigating factors present. See ABA Standards.
Respondent has violated ethical duties owed to the client, to the public, to the legal system, and to the profession.
In charging and retaining fees several thousands of dollars in excess of those authorized by the SSA, and advising Mr. Parker of his right to do so, Respondent deceived his client in order to obtain a pecuniary benefit for himself at the expense of his disabled client. It is difficult to find this conduct inadvertent, particularly as Respondent has failed to date to remedy the situation, despite demand by the SSA that he do so and, indeed, sanctions by that agency. Such intentional lack of candor towards his client merits disbarment as the baseline sanction. ABA Standards, §§ 4.61 and 7.1.
Respondent in his conduct before the SSA, moreover, demonstrated a lack of candor not only to his client but to the administrative tribunal. Disbarment is generally appropriate when a lawyer makes a false statement with the intent to deceive a court and causes actual or potential serious injury to a party or adverse effect on the legal proceeding. ABA Standards, § 6.11. Here, Respondent filed verified pleadings that he later admitted were inaccurate, and offered contradictory and misleading testimony before the administrative law judge. Respondent presumably engaged in such deception in order to protect his own situation as an attorney and to safeguard for himself the fees he had improperly collected from his client. Such conduct violates the most fundamental duty of an officer to the court. Respondent's deceitful conduct before the SSA, moreover, reveals his failure to maintain personal integrity and constitutes a violation of the duties owed to the public that adversely reflects on his fitness to practice law to an extent meriting disbarment. ABA Standards, § 5.11.
The ABA Standards list the following as factors that may be considered in aggravation of the misconduct:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to *351 comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge the wrongful nature of conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution.
ABA Standards, § 9.22.
We find that several of these aggravating factors are present in the instant case. Respondent's misconduct was motivated by a dishonest and selfish reason, namely to make money by taking advantage of his disabled client. Respondent, moreover, has appeared less than truthful during the course of these proceedings, has refused to acknowledge the wrongful nature of his conduct, and has maintained an attitude of utmost indifference to making restitution to Mr. Parker. In addition, Respondent has on three prior occasions been subjected to disciplinary sanctions. In 1970, Respondent received a formal private reprimand from the Louisiana State Bar Association in connection with charging an excessive fee in one case and failing to perform services in another. In 1979, Respondent was disbarred by this Court following his 1973 Georgia conviction for burglary, a felony for which he was sentenced to 10 years at hard labor. LSBA v. Quaid, 368 So.2d 1043 (La.1979). Respondent was reinstated to practice law in Louisiana in May 1983. In re Quaid, 433 So.2d 179 (La.1983). Subsequently, in 1987, he received a second formal private reprimand from the Louisiana Bar Association, this time for failure to take action in a lawsuit and failure to withdraw from a case at the client's request.
Respondent objects to the admission of prior disciplinary sanctions on the grounds that his first two sanctions occurred more than ten years ago and thus are inadmissible under La.C.E. art. 609. This claim is without merit. First, the prior disciplinary sanctions have not been introduced to impeach the credibility of any witness and therefore article 609 is inapplicable. Second, the determination of sanctions in a lawyer discipline proceeding is in the nature of a sentencing hearing and is thus not governed by the Code of Evidence. See La.C.E. art. 1101(C)(4).
The remoteness of prior offenses, however, is a factor to consider in mitigation of Respondent's sanction. ABA Standards, § 9.32(m). We do not, however, find that this mitigating circumstance carries much weight. Although Respondent was disbarred more than ten years ago, it took him a mere four years from the date of his reinstatement to once again receive disciplinary sanctions. Respondent has not submitted evidence of any other mitigating factors. In light of the record before us, we find that the aggravating factors in this case far outweigh the single mitigating factor weakly present.

DECREE
For the reasons assigned, it is ordered that the name James F. Quaid be stricken from the roll of attorneys and that Respondent's license to practice law in the State of Louisiana be revoked and cancelled at his cost. It is further ordered that Mr. Quaid must demonstrate diligent and good faith efforts to make full restitution to Mr. Johnnie E. Parker upon making any application for readmission pursuant to Rule 19, § 24 of the Louisiana Supreme Court Rules.
NOTES
[*] Hall, J. not on panel. Rule IV, Part 2, § 3.

Judge Felicia Toney Williams, Court of Appeal, Second Circuit participating as Associate Justice Pro Tempore, effective September 1, 1994.
[1] The $3,069.00 amount that the petition states is being held in escrow has engendered some confusion in these proceedings, as the SSA relied on the petition to find that Respondent had obtained these funds from Mr. Parker and Respondent claimed to be completely puzzled by the figure. The most logical explanation of its appearance in the petition for fees is Respondent's mistaken belief that the amount withheld by the SSA in connection with the lump sum payment to Mrs. Lambert's children constituted an escrow account.
[2] Respondent objects to admission of the entire SSA record submitted in these proceedings by Disciplinary Counsel on the grounds that the transcript of the hearing constitutes inadmissible hearsay.

We need not reach the question of whether bar disciplinary proceedings are in the main to be strictly governed by the rules of evidence, because we find that the record here contains sufficient admissible evidence, consisting of the business records generated by the SSA and the party admissions by Respondent before the SSA and the Hearing Committee, to adjudicate this matter. We note, however, that the purpose of rules of evidence primarily intended to govern jury trials, particularly the hearsay rules, are less compelling in the context of imposing discipline on members of the legal profession. This Court retains power to determine the ultimate question of admissibility under its original jurisdiction as the triers of fact in disciplinary proceedings, and it may well be more appropriate in disciplinary proceedings to be guided but not confined by strict application of the Code of Evidence. See In re Huddleston, 595 So.2d 1141, 1148 (La. 1992) (concurring opinion). We observe that such an approach has been taken in other jurisdictions. See, e.g., In re Kennedy, 605 A.2d 600, 603 (D.C.App.1992); The Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986); Werner v. State Bar, 24 Cal.2d 611, 150 P.2d 892, 893-94 (1944).