738 So.2d 1054 (1999)
In re Walter J. CUDZIK.
No. 99-B-0522.
Supreme Court of Louisiana.
July 2, 1999.
*1055 Charles B. Plattsmier, G. Fred Ours, Baton Rouge, Counsel for Applicant.
Walter Jacob Cudzik, Harry T. Widmann, Metairie, Counsel for Respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This attorney disciplinary proceeding arises from two counts of formal charges instituted by the Office of Disciplinary Counsel ("ODC") against respondent, Walter J. Cudzik, an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS
Respondent is a practicing attorney with nearly twenty years of experience, primarily practicing in Hammond, Louisiana. In 1991, he opened a second office in Kenner, Louisiana, and hired Guy Warren Olano, Jr., a disbarred Louisiana attorney, to work as his paralegal. However, the evidence indicates that Mr. Olano did a significant amount of work at the Kenner office without supervision from respondent, and may have held himself out as a practicing attorney during this time.
In January, 1992, approximately six months after the opening of the Kenner office, Darlene Cooper retained respondent to represent her in connection with a suit for damages arising from an injury to her minor child, Courtney Cooper. Respondent assigned the case to Lorraine P. McInnis, a newly-admitted attorney recently hired by him on a contract basis. Thereafter, Ms. McInnis worked almost exclusively on Ms. Cooper's case. In addition to handling the personal injury matter, Ms. McInnis secured Ms. Cooper's appointment as Courtney's tutrix, and she filed a petition for divorce on behalf of Ms. Cooper against her estranged husband, Willie Angelo McDaniel.
In August, 1992, Ms. Cooper terminated respondent's representation. Almost simultaneously, Ms. McInnis resigned her employment with respondent. Ms. McInnis was then hired by Ms. Cooper to represent her in the personal injury matter.
Following his termination, respondent actively sought out and contacted Mr. McDaniel, Ms. Cooper's former husband who was living in Alabama, in an apparent attempt to re-gain an interest in the litigation. He tried to gain custody of Courtney on behalf of Mr. McDaniel and sought to revoke the appointment of Ms. Cooper as Courtney's tutrix. Respondent also instituted a collection suit against Ms. Cooper for funds he advanced her for living expenses during his firm's representation of her.[1]
Ultimately, the personal injury case resulted in a substantial award, in excess of $5 million, in favor of Ms. Cooper. In the course of dividing the legal fees from this matter, the trial judge concluded respondent may have acted improperly. Accordingly, *1056 the trial judge filed a disciplinary complaint which forms the basis of this proceeding.

DISCIPLINARY PROCEEDINGS

Formal Charges
After conducting an investigation into the matter, the ODC instituted formal charges against respondent. The first count arose from respondent's actions in connection with the Cooper litigation; the second count resulted from his association with Mr. Olano. Respondent filed an answer denying any misconduct.
A formal hearing was scheduled. Counsel for respondent waived respondent's right to appear at the hearing, and the matter was submitted on documentary evidence, which primarily consisted of the trial transcripts from the fee dispute proceedings, which contained the sworn testimony of respondent regarding his actions and conduct in connection with the personal injury case, as well as other related matters. The ODC submitted a brief, recommending respondent be suspended from the practice of law for a period of eighteen months.

Hearing Committee Report
The hearing committee concluded the ODC proved the formal charges asserted against the respondent by clear and convincing evidence. Regarding the Cooper matter, the committee found respondent violated Rule 1.9(a) and (b)[2] and 7.2(a),[3] since, after having formerly represented the Coopers, he actively solicited Ms. Cooper's estranged husband in a manner materially adverse to his former clients. The committee also found respondent's efforts to have Mr. McDaniel declared Courtney's natural tutor, and attempts to raise Ms. Cooper's contributory negligence in the personal injury litigation,[4] constituted a violation of Rule 3.1.[5] The committee further determined respondent's action in the collection suit, as well as respondent's representation of Mr. McDaniel, constituted violations of Rules 1.16(a)[6] and 4.4.[7]
*1057 As to charges involving respondent's hiring of Mr. Olano, the committee concluded respondent violated Rule 5.3,[8] finding respondent admitted that he had not personally prepared and signed many of the documents which bore his signature. The committee also determined that the respondent violated Rule 5.5(b),[9] since he allowed other persons to mistakenly believe Mr. Olano was a licensed attorney and failed to properly supervise him.
In determining an appropriate sanction, the hearing committee found respondent caused actual injuries to his clients in the form of harassment, aggravation, delay, and emotional distress, as well as damages to the legal profession and the legal system. Relying on the ABA Standards for Imposing Lawyer Sanctions,[10] the committee determined the baseline sanction was disbarment. After recognizing the presence of several aggravating factors,[11] and *1058 in the absence of any factors in mitigation, the committee recommended respondent be disbarred from practice.

Disciplinary Board Report
In the disciplinary board proceedings, respondent's primary argument was that the hearing committee erred when it adopted the trial court's reasons for judgment from the underlying litigation into evidence. Citing this court's opinions in In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714, and In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, the board found that a decision and findings of fact from a related civil proceeding are admissible in a disciplinary proceeding, although they are not controlling as to the findings of fact in the disciplinary proceeding. After reviewing the record in the instant matter, the disciplinary board concluded the hearing committee conducted its own independent review of the record and did not merely adopt the conclusions of the trial judge. On the merits, the disciplinary board fully concurred in the hearing committee's factual findings and recommendation of disbarment.
Board member Robert Leake dissented from the board's recommendation. While he recognized the case involved an "unseemly fight over a perceived lucrative case," he failed to find any serious or potentially serious impact on Courtney Cooper, the minor child who was the actual client in this case. He pointed out that much of respondent's conduct, such as suing to recover money owed to him by Ms. Cooper, was legitimate, though admittedly harassing or aggravating. Based on the lack of any serious injury, he would have limited the sanction to the eighteen month suspension initially recommended by the ODC.
Respondent filed an objection to the disciplinary board's recommendation in this court, and the matter was set for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

DISCUSSION
In a bar disciplinary matter, the hearing committee must "conduct an independent review of the record to determine whether the alleged misconduct has been proved by clear and convincing evidence." Quaid, 646 So.2d at 348. Much of the record in this case consists of trial transcripts from the fee dispute hearing. There is a realistic possibility that the hearing committee, which did not conduct its own hearing, could have been improperly influenced by the conclusions drawn by the trial court, rather than making its own findings based on the evidence before it.
Initially, we find the evidence does not establish on a clear and convincing basis that respondent failed to properly supervise Mr. Olano. A review of the record indicates that while there was some testimony that Mr. Olano essentially ran respondent's Kenner office, this testimony was contradicted by other witnesses, who indicated any actions taken by Mr. Olano were done with the specific authorization of respondent. There is no evidence that Mr. Olano ever communicated directly with the client, signed any pleadings or appeared in court.
As to the allegations involving respondent's conduct toward Ms. Cooper after being discharged as her attorney, we find the evidence clearly establishes that respondent, apparently enraged by the belief that a lucrative personal injury case was "stolen" from him by a former associate, engaged in acts of revenge toward Ms. Cooper which resulted in conflicts of interest. However, the evidence also reveals many of these acts, while imprudent and harassing, were technically legitimate. For example, respondent was within his rights as creditor to file suit against Ms. Cooper for funds advanced to her during the litigation, even though he may have attempted to disguise this transaction by advancing the funds through a "shell" corporation. Additionally, respondent's efforts *1059 to contact Mr. McDaniel, while clearly ill-advised, were relatively brief in duration. Most significantly, the record fails to demonstrate that respondent's vindictive conduct toward Ms. Cooper and his former associate caused any substantial injury to Courtney, the actual "client" under these facts, or had an adverse effect on her case.
While we in no way condone respondent's reprehensible and unprofessional conduct in the Cooper matter, the sanction of disbarment is unduly harsh, especially in the absence of any evidence of harm to the client. Nonetheless, we find his misconduct warrants a suspension of significant length. Having considered all the facts, we conclude a suspension from the practice of law for a period of three years is appropriate discipline.

DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, briefs and oral argument, it is the decision of the court that respondent, Walter J. Cudzik, be suspended from the practice of law for a period of three years. All costs and expenses in this matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1.
CALOGERO, C.J., concurs and assigns reasons.
KIMBALL, J., dissents and assigns reasons.
VICTORY and TRAYLOR, JJ., dissent and would disbar respondent.
CALOGERO, C.J., concurring.
I join three of my colleagues who would suspend respondent from the practice of law for 36 months. I do so in order to achieve a majority in this case. Left to me alone, I would impose an 18 month suspension as recommended by Disciplinary Counsel in his brief to the Disciplinary Board, and by the Disciplinary Board member attorney from New Orleans.
There was no great harm to the only person warranting consideration in this case, that is, the minor child, Courtney Cooper. Furthermore, regarding the law office which this attorney maintained in Kenner, there was no proof in this record that respondent countenanced, encouraged, or even permitted the disbarred attorney/paralegal to engage in the practice of law.
This case presents an attorney who did not control his rage when the young lawyer he hired to help him handle a major personal injury case (a $5 million settlement ultimately) left his employ and took with her this same client. Under the circumstances, I think the 18 month suspension recommended by one board member and by Disciplinary Counsel before the Disciplinary Board is ample discipline for what was undoubtedly ethical misconduct. Disbarment, in my mind, would clearly be excessive.
KIMBALL, Justice, dissenting.
The record fully supports the findings of fact made by the hearing committee, and considering those findings, I believe the recommendation to disbar Mr. Cudzik is the appropriate sanction. The record evidence applicable to Count I clearly shows that respondent took extraordinary means to regain control over the personal injury litigation to further his own monetary interests. His active solicitation of Mr. McDaniel and the filing of numerous motions adverse to Ms. Cooper, as well as his deceptive attempts to settle the case after being discharged, collectively warrant a severe sanction, such as the lengthy suspension that the majority has imposed. I believe that the sanctionable conduct, however, rose to the level of disbarment when the respondent instituted legal proceedings to have his former client declared unfit and to have custody of the severely disabled child placed with an individual that had shown no interest in her during her lifetime, that is, until he was solicited by the respondent and advised that the child was subject of a potentially lucrative *1060 personal injury lawsuit. This blatant disregard for his vulnerable client and the legal profession, as well as his lack of remorse, evidences that respondent is not morally fit to engage in the practice of law.
The evidence submitted in support of charges that respondent sanctioned the unauthorized practice of law in his Kenner office is, in my view, equally troublesome. By allowing his office to be operated by a disbarred attorney without any meaningful supervision, Mr. Cudzik placed the public at risk and clearly violated his professional responsibilities. The record indicates that respondent allowed Mr. Olano, in his capacity as "paralegal," to deal with all clients, draft all pleadings, and supervise and direct the entire office staff, including both lawyers and non-lawyers. It is apparent that respondent's only interest in the Kenner operation was pecuniary in nature. Considering, as the hearing committee found, that there are no mitigating factors present, but rather several aggravating factors, including a selfish motive and prior discipline, I believe that the sanction of disbarment is appropriate in this case.
I respectfully dissent.
NOTES
[*] Knoll, J. not on panel. Rule IV, Part II, § 3.
[1] The suit was filed against Ms. Cooper on behalf of Pepperdine Financial Services, a "shell" corporation owned by Guy Olano, the disbarred attorney employed by respondent. Ms. Cooper stated she was under the impression that she was taking monetary advances from respondent and/or his firm, rather than a finance company. Respondent conceded he personally made the loans from his own funds. While respondent and Mr. Olano denied having any knowledge or association with the financial corporation, the documentary evidence proved otherwise.
[2] Rule 1.9 provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related mater in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.
[3] Although the formal charges cite Rule 7.3(a) for misconduct relating to improper solicitation of a prospective client, it is clear the ODC intended to cite Rule 7.2(a). Formerly, Rule 7.3(a) did pertain to improper client solicitation; however, on October 1, 1993, it was amended and renumbered as Rule 7.2(a), now entitled "Direct contact with prospective clients." The formal charges were not filed until 1997, well after the effective date of the amendment. Rule 7.2(a) provides:

A lawyer shall not solicit professional employment in person, by person to person verbal telephone contact or through others acting at his request or on his behalf from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain.
[4] Respondent, acting on behalf of Mr. McDaniel, sought to have Ms. Cooper named as a party defendant in the personal injury litigation on the basis that she was contributorily negligent for Courtney's injuries since Ms. Cooper had moved the child following the accident.
[5] Rule 3.1 provides:

A lawyer shall not bring or defend a proceeding or assert or controvert an issue therein, unless there is a basis for doing so in good faith, which includes a good faith argument for an extension, modification or reversal of existing law.
[6] Rule 1.16(a) provides:

A lawyer shall not represent a client, or where representation has commenced, shall withdraw from the representation of a client if:
(1) The representation will result in a violation of the rules of professional conduct or other law;
* * *
(3) The lawyer is discharged.
[7] Rule 4.4 provides:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the rights of such a person.
[8] Rule 5.3 provides:

With respect to a nonlawyer employed or retained by or associated with a lawyer:
(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;
(b) A lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.
[9] Rule 5.5(b) provides:

A lawyer shall not:
(b) Assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.
[10] The committee relied on the following ABA Standards:

Standard 4.31(c) provides: "[d]isbarment is generally appropriate when a lawyer, without the informed consent of clients represents a client in a substantially related matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client."
Standard 4.32 provides: "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."
Standard 6.21 provides: "[d]isbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding."
Standard 6.22 provides: "[d]isbarment is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding."
Standard 7.1 provides: "[d]isbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."
Standard 7.2 provides: "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system."
[11] The committee found the following aggravating factors: respondent's lack of acknowledgment of the wrongful nature of his conduct, vulnerability of the former clients, substantial experience in the practice of law (admitted in October, 1974) and respondent's intentional and selfish motives for personal gain. It further recognized respondent's prior disciplinary record:
12/4/87 No. 8616 prior reprimand failure to provide accounting of client
 funds;
9/1/94 94-ADB-018 admonition failure to specifically identify direct
 mail sent to public as advertising mail
 and for failure to submit copy of such to
 LSBA;
3/28/96 96-ADB-020 admonition improper advertising.