*507 ATTORNEY DISCIPLINARY PROCEEDINGS
|,PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Henry B. Jones, Jr., an attorney licensed to practice law in Louisiana but currently on interim suspension.
UNDERLYING FACTS
Counts I and II — The Steadman/Pineda Matter
In August 1996, respondent settled personal injury claims on behalf of Ms. Sharon Steadman and Ms. Josephine Stead-man. Respondent had previously received written notice of a statutory lien for medical services provided to his clients by Jose Pineda, M.D., and by letter dated June 4, 1996, respondent agreed to protect Dr. Pineda’s interest in the settlement of the personal injury claims. Nevertheless, respondent failed to pay the sums owed to Dr. Pineda, totaling $970 for Sharon Steadman and $870 for Josephine Stead-man. Respondent subsequently acknowledged that he paid these sums directly to his clients based upon their representation that they had made arrangements to satisfy Dr. Pineda’s charges.
After Dr. Pineda filed a complaint against respondent with the ODC, respondent was served with a subpoena compelling him to appear on April 1,1997 with his entire file in the Steadman matter. Respondent failed to appear on that date, but he did 12subsequently appear on February 3, 1998 to give sworn testimony concerning the matter.
The ODC alleged respondent’s failure to pay a third-party medical provider violated Rules 1.15(b) (safekeeping property of clients or third persons) and 4.1(a) (knowingly making a false statement of material fact to a third person) of the Rules of Professional Conduct. The ODC alleged respondent’s failure to appear pursuant to a subpoena violated Rules 3.4(a) (unlawfully obstructing another party’s access to evidence), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation), as well as Su *508 preme Court Rule XIX, § 9(c) (knowing failure to respond to a lawful demand for information from a disciplinary authority).
Count III — The Moore Matter
In March 1997, Alberta Moore paid respondent $750 to handle an adoption proceeding on her behalf. Respondent neglected the matter, failed to communicate with his client, and failed to refund the unearned portion of the legal fee he was paid.[1]
The ODC alleged respondent’s conduct violated Rules 1.1 (failure to provide competent representation to a client), 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), and 1.5 (fee arrangements) of the Rules of Professional Conduct.
\zCount TV — The Revilla Matter
In May 1997, Dolores C. Revilla paid respondent $500 to represent her in a criminal case. On June 10, 1997, respondent appeared in court and entered a not guilty plea on Ms. Revilla’s behalf, but thereafter he neglected the matter and failed to communicate with his client. As a result, the trial court was required to appoint an indigent defender to represent Ms. Revilla. Respondent also failed to refund the unearned portion of the legal fee he was paid.
The ODC alleged respondent’s conduct violated Rules 1.1, 1.3, 1.4, and 1.5 of the Rules of Professional Conduct.
Count V — Misdemeanor Theft Conviction
In 1995, respondent received a $1,518 check payable to LaTonya Taylor in connection with the asset forfeiture proceeding subject of Count VI of the formal charges. Respondent endorsed the check without Ms. Taylor’s consent and retained the proceeds for his own use. On November 29, 2000, respondent pleaded guilty to misdemeanor theft and was sentenced under La. Code Crim. P. art. 894 to pay court costs and to serve one month in the parish jail. The court ordered the jail sentence suspended and placed respondent on unsupervised probation for a period of three months. State v. Jones, No. 191,679 on the docket of the 1st Judicial District Court for the Parish of Caddo.
The ODC alleged respondent’s conviction constituted a violation of Rules 4.1 (truthfulness in statements to others), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
\4Count VI — The Taylor Matter
In connection with his representation of Broderick Taylor in a criminal case pending in Caddo Parish, respondent sought the return of funds that were seized from Mr. Taylor at the time of his arrest and made subject of an asset forfeiture proceeding. In September 1993, respondent prepared an affidavit that was executed by Mr. Taylor’s sister, LaTonya Taylor, in which she attested that the funds seized from Mr. Taylor actually belonged to her. Based upon the representations made in the affidavit, the seized funds were returned to LaTonya Taylor by the Caddo Parish District Attorney’s Office. However, in a subsequent proceeding, respondent submitted a contradictory affidavit in which he asserted that the seized funds did not belong to LaTonya Taylor, but rather belonged to Broderick Taylor.
*509 The ODC alleged that respondent’s conduct violated Rule 3.3 (candor toward the tribunal) of the Rules of Professional Conduct.

[Count VII] Contempt of Court

In September 1997, respondent was charged with direct contempt of court for refusing to produce documents subpoenaed from him by the Caddo Parish District Attorney’s Office. Following an October 20,1997 hearing in the 1st Judicial District Court for the Parish of Caddo, respondent was held in contempt of court and sentenced to pay a fine of $200 and costs, or in default thereof, to serve five days in the parish jail.
The ODC alleged that respondent’s conduct violated Rules 3.3, 8.4(a), 8.4(b), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
| .DISCIPLINARY PROCEEDINGS
On March 18, 1998, prior to the filing of formal charges against respondent, this court granted a joint petition for interim suspension submitted by respondent and the ODC. In re: Jones, 98-0414 (La.3/18/98), 707 So.2d 1247. Thereafter, the court rejected a petition for consent discipline filed by respondent and ordered that formal charges be instituted. In re: Jones, 98-1475 (La.7/2/98), 712 So.2d 500.
On July 5, 2001, the ODC filed six counts of formal charges against the respondent. Respondent did not file an answer to the formal charges, and the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence. After consideration of written argument and documentary evidence submitted by the ODC on the issue of sanctions, the hearing committee reeom-mended that respondent be disbarred. The disciplinary board subsequently determined that respondent had made a good faith effort to respond to the formal charges, but that he had not been afforded proper notice of the proceedings in order to participate should he choose to do so. Accordingly, on May 13, 2002, the disciplinary board vacated the order deeming the formal charges admitted, and remanded the matter for a formal hearing before a hearing committee.
Following remand, the ODC amended the formal charges against respondent to add the seventh count discussed above, relating to the contempt of court.[2] Respondent did not file an answer to the amended formal charges. The matter then proceeded to a hearing on the merits, which was conducted by the hearing committee on July 29, 2002.
| fjlearincj Committee Recommendation
At the hearing, the ODC presented documentary evidence in support of the formal charges and respondent testified on his own behalf. After reviewing the evidence, the hearing committee made the following factual findings and legal conclusions:
Count I: Respondent agreed in writing on June 4, 1996 to protect the interest of Dr. Jose Pineda and to withhold the amount of Dr. Pineda’s charges for medical services rendered to Sharon and Josephine Steadman from any sums received in settlement of Sharon and Josephine Steadman’s personal injury matters. The claims of Sharon and Josephine Steadman were settled, which settlements yielded sums sufficient to pay Dr. Pineda’s medical charges. Respondent disbursed the proceeds of the settlements, but failed to ac *510 count to. Dr. Pineda for the charges with respect to Josephine Steadman totaling $870, and Sharon Steadman totaling $970 from the funds received in settlement. Rather, the funds representing Dr. Pine-da’s charges were paid to the Steadmans. The committee determined respondent’s conduct violated Rules 1.15 and 4.1.
Count II: Respondent was served with a subpoena on March 31, 1997 ordering him to appear before Disciplinary Counsel on April 1, 1997 to testify and produce his file in connection with the investigation of the complaint filed by Dr. Pineda. Respondent failed, refused and/or neglected to respond to the subpoena on the date appointed but later met with the Disciplinary Counsel and voluntarily surrendered his license to practice law pending the outcome of this proceeding. The committee determined respondent did not violate the Rules of Professional Conduct in connection with this count; the committee made no reference to the violation of Supreme Court Rule XIX, § 9(c) alleged in the formal charges.
\gCount III: In 1997, respondent was retained by Alberta Moore to file and complete an adoption proceeding whereby Ms. Moore was to adopt' Rebecca Wiggins. Respondent was paid the sum of $750 for the filing and completion of the adoption proceeding. Respondent failed to take any steps in connection with the adoption and further failed to communicate or keep his client advised of the status of the matter. Respondent failed to return or account for any unearned fees paid to him by Alberta Moore. The adoption was later completed by respondent’s law partner at no additional charge to the client. The committee determined respondent’s conduct violated Rules 1.1,1.3,1.4, and 1.5.
Count IV: In May 1997, respondent was retained by Dolores C. Revilla to represent her in Caddo Parish District Court on a felony theft charge. Respondent was paid $500 for the representation. Respondent appeared on one occasion for Ms. Revilla in order to obtain a continuance, and met with the prosecutor and judge to negotiate a plea agreement, but failed to appear for any subsequent court settings on behalf of Ms. Revilla. It was necessary for the court to appoint another attorney to represent Ms. Revilla due to the failure of respondent to appear on her behalf and/or to communicate with her concerning her case. The appointed attorney concluded the plea agreement previously negotiated by respondent. The committee determined respondent’s conduct violated Rules 1.1, 1.3, 1.4, and 1.5.
Count V: Respondent forged the endorsement of LaTonya Taylor to a check and converted the funds, approximately $1,500, to his own use. Respondent was subsequently convicted of misdemeanor theft on November 29, 2000. The committee determined respondent’s conduct violated Rules 3.3,[3] 8.4(b), 8.4(c), and 8.4(d).
| ¡¡Count VI: In connection with his representation of Broderick Taylor on criminal drug possession charges, respondent sought the return of funds subject of an asset forfeiture proceeding in Caddo Parish District Court. Respondent procured and obtained from LaTonya Taylor, the sister of Broderick Taylor, an affidavit asserting her ownership of the funds at issue. Based upon the affidavit of LaTonya Taylor, respondent obtained return of the funds for his client by asserting before the *511 tribunal that the funds actually belonged to LaTonya Taylor. Subsequently, in documents filed on respondent’s own behalf in a criminal contempt matter pending against him, respondent asserted that the funds in question actually belonged to Bro-derick Taylor. The committee did not make a finding of rule violations in connection with Count VI. The committee’s report also did not address the contempt issue raised in Count VII of the amended formal charges.
The committee determined that respondent neglected matters entrusted to him, failed to communicate with his clients, failed to safeguard and account for funds held for a third-party medical provider, made untrue representations to a tribunal in an asset forfeiture proceeding, and converted client funds and/or funds of a third party to his own use. The committee found respondent’s conduct was intentional. Respondent willfully converted client and third-party funds and since the date of his interim suspension has never repaid any of the complainants any portions of the sums due. He was convicted of stealing money belonging to a former client, LaTonya Taylor, by endorsing her name to a check made payable to her and cashing the check and retaining the funds. In addition, he knowingly confected a false affidavit which he presented to the court in order to procure funds which did not belong to him. Respondent has caused serious harm to his former clients and the medical provider in question by converting their funds to his own use. He has also brought the legal ^profession into disrepute by his conviction of a crime involving forgery, theft, and misappropriation of funds. Considering the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction in this matter is disbarment.
As aggravating factors, the committee recognized respondent’s dishonest or selfish motive, a pattern of misconduct, and multiple offenses. In mitigation, the committee found no evidence was submitted showing that respondent has a prior disciplinary record.[4]
Considering the seriousness of the misconduct, in particular the pattern of neglect of respondent’s duties as a lawyer which caused harm to his clients, his filing of false documents, and his conviction of a crime involving theft and forgery and misappropriation of client funds, the committee recommended that respondent be disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

After reviewing this matter, the disciplinary board made the following factual findings and legal conclusions:
Count I: The ODC presented numerous letters to respondent from Dr. Pineda requesting payment for the treatment of two patients, Josephine Steadman ($870) and Sharon Steadman ($970). Dr. Pineda also received a letter from respondent dated June 4, 1996, wherein respondent assured Dr. Pineda that he would be paid out of any 11 nproceeds from the settlement of the personal injury claims. The claims were *512 settled but respondent failed to pay Dr. Pineda; rather, respondent released the funds intended for Dr. Pineda to the Steadmans. The board determined that respondent failed to protect funds belonging to a third party, in violation of Rule 1.15(b), and made a false statement of fact to Dr. Pineda, in violation of Rule 4.1(a).
Count II: The ODC introduced the subpoena personally served on respondent on March 31, 1997, requiring him to appear for a sworn statement on April 1, 1997 concerning his representation of the Stead-mans. The ODC filed a copy of a proces verbal evidencing respondent’s failure to appear. The board determined that respondent failed to cooperate with a disciplinary investigation and failed to appear pursuant to a subpoena, in violation of Rules 3.4(c), 8.1(b), 8.1(c), 8.4(a), 8.4(d), and 8.4(g), as well as Supreme Court Rule XIX, § 9(c). However, the board found no evidence suggesting that respondent obstructed the ODC’s access to evidence in the Pineda matter, in violation of Rule 3.4(a).
Count III: The ODC introduced Ms. Moore’s complaint, her affidavit attesting that she engaged respondent to handle an adoption, and a receipt signed by respondent evidencing payment of $750. Ms. Moore attempted to contact respondent by phone and in person at his office, but he was never available. The board determined respondent failed to provide competent representation to Ms. Moore, failed to communicate with her, neglected her adoption matter, and failed to provide an accounting and a refund of unearned fees, in violation of Rules 1.1, 1.3, 1.4, and 1.5.
Count TV: The ODC introduced Ms. Re-villa’s complaint, her affidavit attesting that she hired respondent for a criminal representation, but that he failed to appear in court and could not be contacted, and a receipt signed by respondent evidencing | ^payment of $500. The board determined respondent failed to provide competent representation to Ms. Revilla, failed to communicate with her, neglected her criminal case, and failed to provide an accounting and a refund of unearned fees, in violation of Rules 1.1, 1.3, 1.4, and 1.5.
Count V: The ODC introduced the court minutes evidencing respondent’s conviction of misdemeanor theft stemming from his fraudulent endorsement of a $1,518 check payable to LaTonya Taylor. The board determined respondent made a false statement of material fact to third persons when he endorsed Ms. Taylor’s name to the check without her authority and negotiated the check at the bank, in violation of Rule 4.1. Moreover, respondent’s theft of his client’s funds violated Rules 8.4(b), 8.4(c), and 8.4(d). Respondent has since fully repaid the Taylors.
Count VI: The sum of $1,518 was seized from Broderick Taylor during a drug stop. Broderick’s only hope to retrieve the money was to have his sister, LaTonya Taylor, claim that the money belonged to her. At respondent’s request, LaTonya made out a false affidavit in order to have the money returned. The board determined that respondent intentionally filed a false affidavit with the court in the forfeiture proceeding, in violation of Rule 3.3.
Count VII: Respondent was found in contempt of court for failing to turn over certain documents in connection with the Taylor matter, after having been ordered by the court to do so. The board determined that respondent’s conduct violated Rules 3.3, 8.4(a), 8.4(b), 8.4(c), and 8.4(d).
Respondent knowingly violated duties owed to his clients, the public, the legal system, and as a professional by failing to provide competent representation, failing to communicate with clients, failing to use reasonable diligence, knowingly filing a *513 false affidavit with a court, failing to properly safeguard the funds of clients and third 1 ^parties, failing to provide an accounting and return unearned fees, failing to cooperate with a disciplinary investigation, engaging in criminal conduct (misdemeanor theft conviction), conduct prejudicial to the administration of justice (found in contempt for failing to turn over documents to the court), and conduct that reflects adversely on his honesty, trustworthiness, and fitness to practice law.
Respondent caused actual harm to his client, Mr. Taylor ($1,518), and a third party, Dr. Pineda ($1,840), by depriving them of their money. Due to his own arrest, respondent was not able to appear in court with Dolores Revilla, did not complete her representation, and did not refund her money ($500). Mr. Taylor and his sister, LaTonya Taylor, received a full refund on May 12, 2000, but Dr. Pineda and Ms. Revilla have not been reimbursed. Based upon respondent’s testimony and a lack of contradictory evidence from the ODC, Alberta Moore’s adoption matter appears to have been resolved by respondent’s former law partner at no additional cost. Considering the ABA’s Standards for Imposing Lawyer Sanctions, the board determined the baseline sanction for respondent’s misconduct is a suspension from the practice of law.
As aggravating circumstances, the board recognized respondent’s prior disciplinary offenses,[5] dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, substantial experience in the practice of law (admitted 1978), and indifference to making restitution. The board found the record supports the mitigating factors of imposition of other penalties or sanctions (with respect to the contempt and his misdemeanor theft conviction), remorse, and remoteness of prior disciplinary offenses.
11sUnder the facts presented, the board recommended that respondent be suspended from the practice of law for three years, retroactive to his March 18, 1998 interim suspension. The board also recommended that respondent be ordered to provide ac-countings and make restitution to Dr. Pineda and Ms. Revilla, and that he be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
One board member dissented, stating that in his view, “the continuous and repeated violations justify disbarment.”
The ODC filed an objection in this court to the sanction recommended by the disciplinary board. Pursuant to Supreme Court Rule XIX, § 11(G)(1)(b), a timely filed objection to the board’s findings and recommendations ordinarily results in the assignment of the matter for oral argument. However, in this case, both parties agreed to waive oral argument and consented to our consideration of the matter on the record presented.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations *514 of the hearing committee and disciplinary board, we have held the manifest error standard is 114applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the detailed factual findings of the hearing committee and disciplinary board. Respondent was held in contempt of court for failing to comply with a subpoena, and he submitted a false affidavit to a court in a legal proceeding. Furthermore, respondent has engaged in serious criminal conduct which resulted in his conviction of theft for fraudulently endorsing a check payable to his client and converting the funds to his own use. No less serious is respondent’s neglect of the legal matters of two clients, failure to communicate with his clients, failure to account for or refund unearned fees owed to his clients, and failure to protect the interests of a third-party medical provider.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s actions are clearly serious in nature and caused actual harm. Contrary to the position taken by the majority of the disciplinary board, we find the baseline sanction for respondent’s intentional misconduct is disbarment. Moreover, we find no justification in the record for deviating downward from the baseline in this case. Rather, we agree with the hearing committee and the dissenting member of the [ ^disciplinary board that respondent’s misconduct is egregious and demonstrates a lack of concern for the welfare of his clients, third persons, and the administration of justice. The aggravating factors present in this case — in particular respondent’s selfish motive and his utter indifference to making restitution to Dr. Pineda, Ms. Moore, and Ms. Revilla— further support our view in this regard.
Accordingly, we will reject the disciplinary board’s recommendation of a three-year suspension and impose disbarment, retroactive to March 18, 1998, the date of respondent’s interim suspension.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Henry B. Jones, Jr., Louisiana Bar Roll number 7485, be and he hereby is disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. It is further ordered that respondent shall pay restitution to Jose Pineda, M.D. in the amount of $1,840.00, to Alberta Moore in the amount of $750.00, and to Dolores C. Revilla in the amount of $500.00, all with legal interest. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The adoption proceeding had not been completed as of August 1997, when Ms. Moore filed her complaint with the ODC. However, it appears from the record that the adoption was subsequently completed by respondent’s former wife and law partner, Brenda Ford-Jones, at no additional cost to Ms. Moore.

. The contempt count is not numbered in the amended formal charges, but for ease of reference, we have designated it as Count VII.

. The formal charges do not allege that respondent's conduct in connection with Count V constituted a violation of Rule 3.3 (candor toward the tribunal). Rather, the formal charges allege that respondent made a false statement of material fact to a third person, in violation of Rule 4.1.

. The committee also acknowledged that respondent expressed "true remorse” for failing to pay Dr. Pineda's medical expenses, which may be considered a mitigating factor. However, as to "the primary and most serious charges of misappropriation or theft and filing of false affidavits,” the committee noted that respondent "offered an explanation but did not acknowledge the wrongness of his conduct or regret that he had handled the matter in the way he did.” A lawyer's refusal to acknowledge the wrongful nature of his conduct is properly considered as an aggravating factor.

. Respondent received a formal private reprimand on September 20, 1985.