*520 ATTORNEY DISCIPLINARY PROCEEDINGS
I,PER CURIAM.
This disciplinary matter arises from three sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Michael F. Melton, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
Three sets of formal charges were filed against respondent by the ODC. The first, bearing the disciplinary board’s docket number 99-DB-057, was filed on June 18, 1999 and encompasses three counts of misconduct involving six clients. The second and third sets of formal charges, 00-DB-096 and 01-DB-020, were filed on August 9, 2000 and February 9, 2001, respectively, and each encompasses one count of misconduct. The three sets of formal charges were consolidated by order of the hearing committee chairman on April 2, 2001.

*521
99-DB-057

Count I — The Turner Matter
In 1998, Tracye Turner paid respondent $10,000 to defend a first-degree murder charge pending against her husband, Isaac Turner, in Jefferson Parish. Respondent failed to appear in court for several hearings, and he failed to appear at trial. After it became clear that respondent misrepresented to the court the reasons for his failures |2to appear, the trial judge appointed counsel from the Indigent Defender Board to represent Mr. Turner[1] and found respondent guilty of direct contempt. Respondent was sentenced to serve ten hours in the Jefferson Parish Correctional Center, ordered to perform fourteen hours of community service work, and fined $100.
In March 1999, Mrs. Turner filed a complaint against respondent with the ODC. During a sworn statement given on April 22, 1999, respondent agreed to provide certain documentation in connection with the matter; however, he has failed to do so.
Count II — The Stewart Matter
In August 1997, Jeannette Stewart paid respondent $5,000 to handle an appeal in a criminal case in which respondent had represented the defendant, Anthony Stewart, at trial. Respondent failed to communicate with his client or Ms. Stewart for several months, despite their attempts to reach him by telephone and in person. Although respondent filed assignments of error in the court of appeal, the appellate brief was ultimately filed by the Louisiana Appellate Project at no charge to the defendant. When Ms. Stewart was finally able to reach respondent in March 1998, she asked him to return the fee she had paid. Respondent refused, stating that he had prepared the rough draft of the appeal (consisting of four pages) and was waiting for the briefing deadlines to be set. Respondent informed complainant that he could only be fired for “just cause,” and that someone other than himself doing the work at no charge was not “just cause.” Respondent never filed a brief in the matter and he faded to account for or refund the unearned portion of the fee Ms. Stewart paid.
In May 1998, Ms. Stewart filed a complaint against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaint.
| a,Count III — The Hebert, et al. Matter
Alex Hebert, Jr., Irell Warren, Sr., Lionel Johnson, Sr., and Lionel Johnson paid respondent $250 each to appeal the outcome of a union hearing and to appear on their behalf at the hearing on the appeal. Respondent signed the appeal, which was untimely filed, and he failed to appear at the hearing. Respondent later admitted that he had simply signed the appeal and had no knowledge of when it was actually filed, because the appeal had been prepared and filed by Endesha Jua-kali, a suspended attorney. Respondent further admitted that he was acting as a “conduit” so that the four clients could have Mr. Juakali as their lawyer. Respondent agreed to share half the $1,000 attorney’s fee with Mr. Juakali, and refused to refund any fees to the clients.
In December 1997, Messrs. Hebert, Warren, Johnson, Sr., and Johnson filed complaints against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaints.
The ODC alleges that respondent’s conduct in the Turner, Stewart, and Hebert, *522 et al. matters violates the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.5(f)(6) (failure to refund an unearned fee), 3.2 (failure to expedite litigation consistent with the interests of the client), 3.3(a)(1) (making a false statement of material fact or law to a tribunal), 5.4(a) (sharing legal fees with a non-lawyer), 5.5(b) (assisting a non-lawyer in the unauthorized practice of law), 8.1(e) (failure to cooperate with the ODC in its investigation), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of __yustice). Respondent answered the formal charges and denied any intentional misconduct.

00-DB-096

The White Matter

In August 1998, the family of Monte White paid respondent $7,500 to handle an appeal in a criminal case involving Mr. White. Respondent filed an appeal and an October 5,1998 return date was set for the record. Respondent claims that he requested the transcripts of Mr. White’s trial and sentencing from the court reporter in Division “H” of the Orleans Parish Criminal District Court in August 1998.
On February 26, 1999, the Fourth Circuit Court of Appeal ordered the Division “H” court reporter, Lorie Barnewold, to prepare and file the transcripts within twenty days. A second such order was issued on May 10, 1999. On June 28,1999, Ms. Barnewold informed the court of appeal that she had left several messages for respondent that he would have to pay an up-front deposit before she would begin the transcription process; however, she had not received a response from respondent. On August 11, 1999, the court of appeal ordered respondent to pay the costs to the court reporter within fifteen days. A second such order was issued on September 20, 1999. Respondent then filed a motion for extension of time, indicating that he had been unable to locate the court reporter; however, the order was not signed by the court of appeal.
On January 3, 2000, the court of appeal ordered the trial judge to take action to have the transcript prepared. On April 6, 2000, the trial judge was ordered to determine whether new appeal counsel should be appointed. Following a hearing on May 19, 2000, the trial court appointed new counsel to represent Mr. White.
|BIn October 1999, Mr. White’s mother, Carolyn White, filed a complaint against respondent with the ODC. Respondent failed to cooperate in the investigation of the complaint.
The ODC alleges that respondent’s conduct violates the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.3, 1.4 (failure to communicate with a client), 1.5 (failure to account for and refund an unearned fee), 3.2, 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(g) (failure to cooperate with the ODC in its investigation). The ODC further alleged that respondent failed to respond to a lawful demand for information from a disciplinary authority, in violation of Supreme Court Rule XIX, § 9(c). Respondent answered the formal charges and admitted he was retained to handle Mr. White’s appeal; however, he denied he had intentionally violated the Rules of Professional Conduct.

01-DB-020

The Unauthorized Practice of Law Matter

On August 1, 1999, respondent was certified ineligible to practice law in Louisiana *523 for failing to comply with the mandatory continuing legal education requirement. Between September 3, 1999 and October 30, 2000, respondent was ineligible to practice for failing to pay his bar dues and the disciplinary assessment. Nevertheless, on two occasions in 2000, respondent appeared in open court as counsel for the defendant in the matter entitled State of Louisiana v. Edward Gilmore, number 412,142 on the docket of the Orleans Parish Criminal District Court. Respondent also failed to cooperate in the ODC’s investigation of the complaint filed in connection with this matter.
[ fiThe ODC alleges that respondent’s conduct violates the following provisions of the Louisiana Rules of Professional Conduct: Rules 5.5(a) (engaging in the unauthorized practice of law) and 8.4(g). Respondent answered the formal charges and admitted that he appeared in court in the Gilmore matter on May 18, 2000; however, he asserted “it was his intent to appear only as a friend of defendant and not as his attorney.”
DISCIPLINARY PROCEEDINGS
This matter was initially set for a formal hearing on the merits on September 17, 2001. Respondent attended the hearing unrepresented by counsel and requested a continuance. The committee agreed to the request and continued the hearing until December 10, 2001, with the understanding that respondent was to be prepared at that time to present all his witnesses and evidence regarding the formal charges.
On December 10, 2001, respondent again appeared without benefit of counsel, but he stated that he and Deputy Disciplinary Counsel Julie White had entered into a joint stipulation of facts relating to each of the three sets of formal charges. In the joint stipulation, the parties agreed that if there had been a full hearing on the merits of the formal charges, “the following facts would have been proven by clear and convincing evidence”:[2]
1. Information was received by the Office of the Disciplinary Counsel on March 25, 1999, in investigative matter 0009153, alleging that respondent was paid [7$10,000 by Tra-cye Turner on August 20, 1998, to represent defendant, Isaac Turner, with respect to criminal charges of first degree murder. Respondent failed to show up in court for several hearings, as well as for the trial set for May 17,1999, and re-set for May 19, 1999. The court finally appointed counsel from the Indigent Defender Board to represent the client after it became clear that respondent misrepresented to the court the reasons for his failures to appear. Although respondent ultimately represented defendant, Isaac Turner, at trial, the court found respondent guilty of direct *524 contempt. Respondent was sentenced to 10 hours in the Jefferson Parish Correctional Center. In addition, he was ordered to serve 14 hours of community service and pay a $100 fíne.
2. Michael F. Melton’s conduct in this matter involves dishonesty, fraud, deceit, and misrepresentation; lack of diligence; engaging in conduct prejudicial to the administration of justice; lack of candor toward the tribunal; and failure to expedite litigation.
3. Michael F. Melton’s conduct in this matter'violated Rules 1.3, 3.3(a)(1), 3.2, 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
4. Information was received by the Office of the Disciplinary Counsel on May 26, 1998, in investigative matter 0007782, alleging that respondent was paid $5,000 on August 20, 1997, to handle an appeal in a criminal case in which respondent had represented the defendant, Anthony Stewart, at trial. Although respondent filed assignments of error, the notice of appeal reflected the Louisiana Appellate Project as counsel for appellant. The appellate brief was ultimately filed by the Louisiana Appellate Project at no charge to the defendant. The defendant’s mother, Jeanette Stewart, inquired of respondent if she could get her money back and respondent replied in the negative, stating that he had prepared a rough draft of the appeal (consisting of four pages) and was waiting for the briefing deadlines to be set. Respondent never filed a brief and failed to complete the work. After well over a year, respondent has failed to account for or refund any of the fee paid.
5. Michael F. Melton’s conduct in this matter involves failure to account for and refund an unearned fee, and lack of diligence.
6. Michael F. Melton’s conduct in this matter violated Rules 1.3 and 1.5(f)(6) of the Rules of Professional Conduct.
7. Information was received by the Office of the Disciplinary Counsel on December 9, 1997, in investigative matters 0006878, 0006879, 0006880, and 0006882, alleging that respondent was paid $1,000 to appeal the outcome of a union hearing for four clients, Alex Hebert, Irell Warren, Lionel Johnson, Sr. and Lionel Johnson, and to appear at the hearing on the clients’ behalf. Respondent signed the appeal, which was clearly not filed timely, and failed to appear at the hearing on the appeal. Respondent admitted that he signed off on the appeal documents, which were prepared and filed by Endesha [sJuakali (an attorney suspended from the practice of law) and that he had no knowledge of when the appeal was filed. Respondent admitted that he was acting as a “conduit” so that the clients could have the lawyer they wanted, Endesha Juakali, a suspended attorney. Respondent has refused to refund any fees to the clients.
8. Michael F. Melton’s misconduct in these matters involves failure to account for and refund an unearned fee; lack of diligence; and neglect of legal matters.
9. Michael F. Melton’s conduct in these matters violated Rules 1.3 and 1.5(f)(6) of the Rules of Professional Conduct.
*525 10. Carolyn White and her son, Gregory and/or Michael White, paid respondent $7,500 in August 1998 to handle the criminal appeal for Monte White, her son, who was convicted in June of 1998 and was sentenced to life imprisonment. Respondent filed an appeal and was waiting for the transcript of the trial in order to prepare the brief. No briefing dates were set by the Fourth Circuit Court of Appeal or the dates were continued at respondent’s request because of the delay in obtaining the transcript. Respondent claims that he signed a slip at the trial court “section H” requesting that the transcript be prepared in August 1998. The court reporter for Section “H” at Orleans Criminal District Court was Ms. Lorie Barnewold. The evidence indicated that Ms. Barne-wold was the court reporter through June 1999. She indicates that she left several messages for respondent that he would have to pay an up front deposit before she would begin the transcription process. She never received a response. Respondent states that he could not locate Ms. Barnewold to determine the amount owed and that he was never told he would have to pay any deposit up front. However, respondent could not produce any evidence of steps taken on his client’s behalf to obtain the transcript and pay for same. Over one year after respondent’s client was sentenced, the Fourth Circuit Court of Appeal ordered respondent to pay the costs to the reporter within fifteen (15) days. Respondent was again ordered to pay costs on September 20, 1999. Respondent filed a Motion for Extension of Time at the Fourth Circuit indicating that he had been unable to locate the court reporter. The order was not signed. By January 3, 2000, the Fourth Circuit ordered the District Court Judge to take action to have the transcript prepared and to determine appeal counsel. The hearing was held in Criminal Court on May 19, 2000, wherein respondent’s client was appointed new counsel. The Office of Disciplinary Counsel sent a copy of the complaint requiring respondent to respond within fifteen (15) days of November 1, 1999. Respondent failed to respond. Respondent appeared at the Office of Disciplinary Counsel on January 5, 2000, in response to a subpoena to give his sworn testimony. The Office of Disciplinary Counsel sent respondent a certified letter on April 26, 2000, requiring a further response within fifteen (15) days of May 10, 2000. Respondent failed and refused to respond to same.
11. Respondent’s conduct in this matter represents lack of diligence, in violation of Rule 1.3; lack of communication, in violation of Rule 1.4; failure to account for and refund an unearned fee, in violation of Rule 1.5; failure to expedite litigation, in violation of Rule 3.2; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(c); failure to cooperate with the Office of Disciplinary Counsel, in violation of Rule 8.4(g) of the Rules of Professional Conduct and Louisiana Supreme Court Rule XIX, Section 9(c), | gfailure to respond to a lawful demand for information from a disciplinary authority.
*526 12. The Office of Disciplinary Counsel received information on May 19, 2000 that respondent appeared as counsel representing a criminal defendant in Orleans Parish Criminal Court on March 30, 2000 and May 18, 2000 in the case of the State of Louisiana vs. Edward Gilmore, Docket No.: 412,142-Section “M5”. Respondent was ineligible to practice law [on those dates]. The information was forwarded by the Office of Disciplinary Counsel via certified mail to respondent on June 26, 2000, requiring respondent to provide a written response to same within fifteen (15) days of receipt of the letter. The return receipt card indicated the date of delivery as of June 27, 2000. Respondent failed, refused and neglected to reply until November 20, 2000, at which time respondent asserted he appeared in court as defendant’s “friend,” not as defendant’s attorney. The documents of the court, however, reflect that respondent in fact appeared as defendant’s attorney. Respondent’s conduct in this matter involves engaging in the unauthorized practice of law, in violation of Rule 5.5(a), and failure to cooperate with the Office of Disciplinary Counsel, in violation of Rule 8.4(g) of the Rules of Professional Conduct.
In addition to the joint stipulation of facts, the committee also received into evidence nearly forty exhibits offered by the ODC in support of the formal charges, and heard testimony from Tracye Turner, Jeanette Stewart, Alex Hebert, Jr., and Michael White,[3] each of whom generally testified to the facts as they were set forth in the joint stipulation.
At the conclusion of the hearing, respondent requested that the record be held open to receive additional mitigating evidence and for the filing of a post-hearing memorandum. The hearing committee chairman granted this request; however, respondent filed nothing for the committee’s consideration.

Hearing Committee Recommendation

|inIn its May 20, 2002 report, the hearing committee found that the allegations of the formal charges were, in effect, deemed admitted and proven by clear and convincing evidence pursuant to the joint stipulation of facts. The committee found the ODC’s witnesses to be “truthful and sincere in their rendition of the facts,” and noted they generally testified as per the stipulation. On the other hand, the committee felt respondent’s testimony concerning the stipulated facts was “convoluted, unconvincing, and lacked any detail or conciseness which would convince the hearing committee that the stipulation was in any way incorrect. In fact, [respondent’s] explanation only further convinced the hearing committee that [respondent] was indeed committing the various violations outlined in the stipulation itself.”
Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined the baseline sanction for respondent’s misconduct is a suspension. In aggravation, the committee recognized respondent’s multiple offenses, pattern of *527 misconduct, and substantial experience in the practice of law (admitted 1986). However, in mitigation, the committee found that respondent demonstrated remorse and “indicated that he wants to make restitution to most of these clients.”
Based on this reasoning, the committee recommended that respondent be suspended from the practice of law for two years, with one year deferred, followed by a one-year period of supervised probation. The committee further recommended that as a condition of reinstatement, respondent be ordered to refund all unearned fees to his clients in the amounts set forth in the joint stipulation of facts.
The ODC filed an objection to the leniency of the sanction recommended by the hearing committee.
| nDisciplinary Board Recommendation
After reviewing this matter, the disciplinary board found that the hearing committee’s factual findings are generally supported by the record. The board further found that the joint stipulation of facts, along with the evidence adduced at the hearing, support the determination that respondent violated the following Rules of Professional Conduct: in 99-DB-057, respondent violated Rules 1.3, 1.5(f)(6), 3.2, 3.3(a)(1), 8.1(c), 8.4(b), 8.4(c), and 8.4(d); in 00-DB-096, respondent violated Rules 1.3, 1.4, 1.5, 3.2, 8.4(c), and 8.4(g), as well as Supreme Court Rule XIX, § 9(c); and in 01-DB-020, respondent violated Rules 5.5(a) and 8.4(g). However, after a de novo review of the record, the board concluded that respondent’s conduct in the Hebert, et al. matter did not constitute sharing legal fees with a non-lawyer or assisting a non-lawyer in the unauthorized practice of law. First, the board noted Mr. Hebert’s acknowledgment that respondent, not Mr. Juakali, had the professional responsibility for the representation of the four union workers. Furthermore, respondent testified that he supervised Mr. Juakali’s work, which was in the nature of the services provided by a paralegal.[4] Finally, the board concluded that although a 50/50 split of the $1,000 attorney’s fee with Mr. Juakali “may be questionable, there is nothing in the record to indicate that the $500.00 Respondent paid to Mr. Juakali was anything other than payment for paralegal services rendered by Mr. Juakali.” Based on this reasoning, the board determined that respondent did not violate Rules 5.4(a) and 5.5(b) of the Louisiana Rules of Professional Conduct.
haThe board found respondent knowingly violated duties owed to his clients, the legal system, and the profession. Respondent’s clients were harmed by his knowing neglect of their legal matters and failure to promptly refund any unearned portion of the legal fees he received. Mr. White was further harmed by respondent’s failure to reasonably communicate with his client. Respondent’s misconduct jeopardized his clients’ legal matters and delayed resolution of their cases, and his failure to refund any unearned portion of the legal fees paid by his clients potentially deprived them of funds they were rightfully owed. The legal system has been harmed by respondent’s failure to appear in court as re *528 quired and by his failure to expedite his clients’ legal matters. Respondent’s misconduct unduly burdened and delayed the legal system. Finally, the legal profession has been harmed by respondent’s failure to cooperate in the disciplinary investigation of the complaints filed against him.
The board concurred in the aggravating factors cited by the committee, and recognized the mitigating factor of remorse is present.
In light of these considerations, the ABA’s Standards for Imposing Lawyer Sanctions, and the prior jurisprudence,[5] the board concluded the sanction proposed by the committee is too lenient. Accordingly, the board recommended that respondent be suspended from the practice of law for three years and ordered to make restitution to his clients. The board also recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
| igNeither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1816 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
We agree that the factual findings of the hearing committee are well supported by the evidence. We also agree that these factual findings support the disciplinary board’s conclusion that respondent has violated the Louisiana Rules of Professional Conduct.
Having found professional violations, we now turn to a determination of the appropriate sanction for this misconduct. In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
luAs the board properly recognized, each of respondent’s multiple instances of serious misconduct, standing alone, justifies a lengthy suspension. In light of the aggravating factors present in *529 this case, we see no justification for imposing a suspension of less than three years. Accordingly, we will accept the disciplinary board’s recommendation and suspend respondent from the practice of law for three years. We will further order respondent to make full restitution to his clients.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is ordered that Michael F. Melton, Louisiana Bar Roll number 17323, be suspended from the practice of law in Louisiana for a period of three years. It is further ordered that respondent make full restitution to his clients of any unearned legal fees. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Notwithstanding the appointment of the 1DB, respondent did, in fact, represent Mr. Turner when the case was re-set for trial.

. In response to questions from the hearing committee chairman, respondent agreed these stipulations constituted his agreement with the ODC. However, during the course of the hearing, respondent advised the committee that he had not read the joint stipulation of facts prior to signing it. The committee chairman recessed the hearing briefly to allow respondent the opportunity to do so. Following the recess, respondent stated it was his intention “to accept the stipulation as long as I can give my side of the story, make my statement in terms of where [the stipulation is] inaccurate or what's not being said.” The committee then allowed respondent to testify at length concerning the stipulated facts, and in this testimony, respondent essentially repudiated the stipulation. However, both the hearing committee and the disciplinary board ultimately concluded that the joint stipulation is substantially an accurate rendition of facts clearly and convincingly established by the ODC.

. The ODC had actually subpoenaed some 13 witnesses to testify in person before the committee. However, after respondent agreed to enter into the joint stipulation of facts, the committee members, respondent, and Deputy Disciplinary Counsel Ms. White determined that one witness from each "complainant group" would be called to testify and that the remaining witnesses would be dismissed. Both parties were given the opportunity to question the complainants who testified.

. At the time of the Hebert, et al. representation, no restriction prevented a suspended lawyer from working as a paralegal in a law firm or for another attorney. However, effective July 1, 2002, we amended Rule 5.5 of the Louisiana Rules of Professional Conduct to provide that a lawyer may not “employ, contract with as a consultant, engage as an independent contractor, or otherwise join in any other capacity, in connection with the practice of law, any person the attorney knows or reasonably should know is a suspended attorney, during the period of suspension, unless first preceded by the submission of a fully executed employment registration statement to the Office of Disciplinary Counsel, ...”

. The board considered three separate lines of jurisprudence: first, cases involving neglect of legal matters, failing to communicate with clients, failing to account for or refund unearned fees, and failing to cooperate with the ODC; second, cases involving the practice of law by attorneys who were ineligible to do so; and third, cases involving attorneys found to be in contempt for violating orders of a court. The board concluded that each of respondent's multiple instances of serious misconduct, standing alone, justifies a lengthy suspension.