942 So.2d 34 (2006)
In re Glen Edward SMITH.
No. 2006-B-1709.
Supreme Court of Louisiana.
November 17, 2006.

*35 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Glen Edward Smith, a disbarred attorney. For the reasons that follow, we now permanently disbar respondent.

PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in *36 Louisiana in 1992. On June 30, 1999, we granted a joint petition for interim suspension which had been filed by the parties on June 1, 1999. In re: Smith, 99-1575 (La.6/30/99), 738 So.2d 1053. Six months later, we accepted a petition for consent discipline and disbarred respondent, retroactive to the date of his interim suspension. In re: Smith, 99-3307 (La.12/17/99), 752 So.2d 798 (hereinafter referred to as "Smith I"). The misconduct at issue in Smith I was extremely serious and included, among other things, respondent's conversion of client and third-party funds, neglect of legal matters, failure to communicate with clients, failure to refund unearned fees, and failure to cooperate with the ODC in its investigation.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.

FORMAL CHARGES

The Thompson Matter
In March 1998, while representing Cecil and Sandra Thompson in a personal injury matter, respondent guaranteed payment of the Thompsons' debt to Azimuth Financial Corporation ("Azimuth") out of any judgment or settlement obtained by the Thompsons. In September 1998, the Thompsons' personal injury matter settled. Thereafter, respondent withheld $2,085 from the settlement to pay Azimuth. However, he failed to remit the payment to Azimuth and, instead, converted the funds to his own use. In June 1999, counsel for Azimuth filed a complaint against respondent with the ODC.
The ODC alleged that respondent's conduct violated Rules 1.15(b) (safekeeping property of clients or third parties) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

The Delvalle Matter
On June 2, 1999, the day after respondent and the ODC filed a joint petition for interim suspension in this court, respondent accepted the representation of Angela Delvalle in a custody matter. Ms. Delvalle paid respondent a $3,000 retainer fee. Respondent accepted the representation knowing he was to be interimly suspended. He also failed to communicate with his client and neglected her legal matter when he failed to appear for a scheduled hearing on June 15, 1999. On June 30, 1999, Ms. Delvalle terminated respondent's representation. Thereafter, respondent refunded $2,000 to Ms. Delvalle but failed to account for the balance of the fee he retained. In July 1999, Ms. Delvalle filed a complaint against respondent with the ODC.
The ODC alleged that respondent's conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4[1] (failure to communicate with a client), 1.15, and 8.4(c) of the Rules of Professional Conduct.

The Irula Matter
On June 14, 1999, nearly two weeks after respondent and the ODC filed a joint petition for interim suspension in this court, respondent accepted the representation of Vladimir Irula in a DWI matter. Mr. Irula paid respondent $250 towards a $550 fee. Respondent accepted the representation knowing he was to be interimly suspended. He also neglected Mr. Irula's legal matter and failed to appear in court on the arraignment date, which resulted in the issuance of a bench warrant for Mr. Irula's arrest. Furthermore, respondent failed to communicate with Mr. Irula and *37 failed to refund the unearned fee. In July 1999, Mr. Irula filed a complaint against respondent with the ODC.
The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, 1.5 (failure to refund an unearned fee), and 8.4(c) of the Rules of Professional Conduct.

The Morrison Matter
In 1997, Bertha Morrison hired respondent to handle two separate personal injury matters. Respondent neglected the matters and failed to communicate with Ms. Morrison. Upon respondent's subsequent interim suspension and disbarment, he failed to return Ms. Morrison's file to her. In August 1999, Ms. Morrison filed a complaint against respondent with the ODC.
The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, and 1.16(d) (obligations upon termination of the representation) of the Rules of Professional Conduct. The ODC also alleged that respondent violated Supreme Court Rule XIX, § 26 (notice to clients, adverse parties, and other counsel) by failing to return Ms. Morrison's file after his interim suspension.

The Spencer Matter
In January 1999, James Paul Spencer hired respondent to represent him in a DWI matter, paying him $500. Respondent appeared in court for Mr. Spencer's arraignment but performed no other work in the matter; nevertheless, he failed to refund the unearned portion of the fee Mr. Spencer paid. Respondent also accepted $2,000 to represent Mr. Spencer in a divorce proceeding. In this matter, respondent made only a single one-hour court appearance. Thereafter, he performed no other work in the matter and failed to refund the unearned portion of the fee. Respondent also failed to communicate with his client. In August 1999, Mr. Spencer filed a complaint against respondent with the ODC.
The ODC alleged that respondent's conduct violated Rules 1.3, 1.4, and 1.5 of the Rules of Professional Conduct.

The Husser Matter
Respondent represented Joseph and Morningstar Husser in February 1998 when Woman's Hospital obtained a judgment against Mr. Husser. Thereafter, Mr. Husser instructed respondent to make arrangements with the hospital to permit him to pay the judgment in installments. Respondent claimed to have done so and informed his clients the hospital would accept the sum of $8,800 in installment payments. The Hussers then sent several payments totaling $8,800 to respondent, who was to forward said payments to the hospital. Although respondent assured the Hussers that the matter had been "taken care of," when they later tried to sell their house, they learned the hospital still had a viable judgment against them because it never received any payments. Furthermore, the hospital advised the Hussers that it had never negotiated a resolution of the judgment with respondent.
During the same period of time, the Hussers learned they owed sales taxes to the Louisiana Department of Revenue related to the operation of their business. Again, the Hussers requested respondent's help. He claimed to have arranged payment of the taxes to the Department of Revenue on an installment basis. The Hussers then sent several payments totaling $9,500 to respondent, who was to forward said payments to the Department of Revenue. Subsequently, the Department of Revenue seized the Hussers' bank accounts to satisfy the past due taxes. Thereafter, the Hussers learned respondent had never forwarded their funds to the Department of Revenue.
*38 In October 1999, counsel for Mr. and Mrs. Husser filed a complaint against respondent with the ODC. Following investigation of the complaint, the ODC determined that respondent's conduct violated Rules 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) of the Rules of Professional Conduct.

The Failure to Cooperate Matter
In each of the above matters, respondent failed to cooperate with the ODC in its investigation by either failing to claim the certified mail notifying him of the complaint or by failing to respond after claiming the certified mail. The ODC alleged that respondent's conduct violated Rules 8.1(c) (failure to cooperate with the ODC in its investigation) and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

DISCIPLINARY PROCEEDINGS
Respondent failed to answer or otherwise reply to the formal charges filed against him on February 19, 2004. Accordingly, by order of the hearing committee chair dated August 31, 2004, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. In its submission filed on August 15, 2005, the ODC recommended the imposition of permanent disbarment for respondent's intentional and "serious misconduct after his agreed-upon suspension from the practice of law." Respondent filed nothing for the hearing committee's consideration.

Hearing Committee Recommendation
The hearing committee determined that the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). The committee also determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
Based on these findings, the committee determined that respondent violated duties owed to his clients, the public, the legal system, and as a professional. He acted intentionally, causing actual harm. Relying on the ABA's Standards for Imposing Lawyer Sanctions, the committee found that the baseline sanction is disbarment.
As aggravating factors, the committee found the following to be present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victims, and substantial experience in the practice of law (admitted 1992). The committee found no mitigating factors to be present.
Further relying on Guidelines 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) and 8 (following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or while the lawyer is suspended from the practice of law or disbarred) of the permanent disbarment guidelines, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee's recommendation.

*39 Disciplinary Board Recommendation

After review, the disciplinary board determined that the hearing committee's factual findings are supported by the record and that the committee properly applied the Rules of Professional Conduct. The board accepted the aggravating factors found by the committee but added the aggravating factor of prior disciplinary offenses.
The board agreed with the committee that permanent disbarment is appropriate in this matter, citing Guidelines 1 and 8 of the permanent disbarment guidelines. Respondent's conversion of funds in the Thompson and Husser matters, as well as his failure to account for or refund unearned fees in the Delvalle, Irula, and Spencer matters, makes Guideline 1 applicable. The board also asserted that respondent's acceptance of the representations of Ms. Delvalle and Mr. Irula after he had filed a joint petition with the ODC requesting his interim suspension makes Guideline 8 applicable. The board reasoned that "[e]ven though respondent had not technically `received notice' of his interim suspension at the time he accepted the representation of these two individuals, his actions certainly fall within the realm of the guideline. He knew or should have known that his suspension was imminent and he could not complete the representation of these individuals."
Based on this reasoning, the board recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.

DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record of this deemed admitted proceeding reveals that respondent neglected legal matters, failed to communicate with his clients, converted to his own use client and third-party funds, failed to account for or refund unearned fees paid by his clients, failed to return a client's file, and failed to cooperate with the ODC in its investigation. This conduct clearly falls below the standards expected of a lawyer licensed to practice law in this state and, most disappointingly, is markedly similar to that which we saw in Smith I.
Having found professional misconduct, we now turn to a discussion of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
*40 Respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system, and as a professional, causing actual harm. The baseline sanction for respondent's misconduct is undoubtedly disbarment according to the ABA's Standards for Imposing Lawyer Sanctions and our prior decisions. The only mitigating factor which is apparent from the record is the undue delay which has marked this disciplinary proceeding;[2] however, considering the numerous aggravating factors present, this solitary mitigating circumstance is insufficient to warrant a downward deviation from the baseline sanction of disbarment.
The sole remaining issue presented for our consideration is whether respondent's misconduct is so egregious that he should be permanently prohibited from reapplying for admission to the practice of law. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
Applying the guidelines to the instant case, we find respondent's conversion of funds due to his clients and/or their creditors falls within the scope of Guideline 1, which indicates that permanent disbarment is appropriate in cases of repeated or multiple instances of intentional conversion of client funds with substantial harm. Likewise, respondent's failure to account for and refund unearned fees paid by his clients resulted in a conversion of those funds to the detriment of his clients. Respondent's conduct caused substantial harm to his clients, particularly to Mr. and Mrs. Husser. As previously discussed, the Hussers' bank accounts were seized and a lien was placed on their home by their creditors after respondent converted $18,300 which they had delivered to him to pay the debts in question. Respondent's actions clearly justify permanent disbarment pursuant to Guideline 1.[3]
Considering respondent's misconduct in this case in light of his earlier professional violations in Smith I, we reach the inescapable conclusion that respondent is not morally fit to practice law in the State of Louisiana. He has victimized both clients and third parties in the past and it is highly likely he will continue to do so in the future if given an opportunity. In order to protect the public and maintain the high standards of the legal profession *41 in this state, we must permanently disbar respondent.
Accordingly, we will accept the recommendation of the disciplinary board and disbar respondent on a permanent basis. We will also order respondent to make restitution to his victims.

DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Glen Edward Smith, Louisiana Bar Roll number 21884, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to make restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J. dissents and assigns reasons:
I find this case to be indistinguishable from our recent decision in In re: Banks, 06-0398 (La.10/13/06), 939 So.2d 1201. Had the Office of Disciplinary Counsel brought all the charges at the time of respondent's initial disbarment proceeding in 1999, he could not have been permanently disbarred, since the court had not yet adopted that sanction. Only by holding the charge over until 2004, was respondent exposed to the more severe sanction.
I question the Board's conclusion that respondent's acceptance of new representation after the submission of his petition for interim suspension, but prior to action by this Court, constitutes the unauthorized practice of law.
As per Banks, I would find respondent guilty of additional violations warranting disbarment.
NOTES
[1] The ODC actually charged respondent with a Rule 1.14 violation. However, considering the nature of the misconduct, this appears to be a typographical error.
[2] All of the misconduct at issue in this proceeding occurred before respondent was disbarred in Smith I. Indeed, all of the complaints against respondent were filed with the ODC prior to our December 17, 1999 decision in that case. Nevertheless, the ODC did not seek to consolidate the two proceedings. Moreover, for reasons which have not been adequately explained in this record, the ODC did not institute formal charges in this matter until February 2004.
[3] Because we find Guideline 1 applies to this case, we need not decide the correctness of the board's reasoning concerning the applicability of Guideline 8. However, we observe in passing that Guideline 8 applies to lawyers who engage in the unauthorized practice of law following resignation, suspension, or disbarment. In the instant case, respondent was not suspended at the time he accepted the representations in the Dalvalle and Irula matters, and there is no evidence in this record that he practiced law for these clients after his interim suspension became effective. Although it is obviously ill advised for an attorney to accept new client representations during the period between submission of a petition for interim suspension and action on the petition by this court, it does not appear such conduct, standing alone, constitutes the unauthorized practice of law for purposes of Guideline 8.