PER CURIAM.
_|jThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Michael L. Hyman, an attorney licensed to practice law in Louisiana, but currently ineligible to practice.
UNDERLYING FACTS
The facts of these matters are not in dispute, having been stipulated to by the parties.

*647
The Smith Matter

Chester Smith retained respondent to represent him after he was injured in a June 1998 work-related accident. In June 1999, respondent filed a personal injury-lawsuit on behalf of his client and instituted a worker’s compensation claim. Several years later, Mr. Smith retained attorneys Mark Boyer and Charles Duhe to represent him. On March 26, 2002, Mr. Smith terminated the attorney-client relationship with respondent via letter and requested his file. Respondent received the letter but failed to provide Mr. Smith with his file as requested.
On April 11, 2002, July 16, 2002, August 6, 2002, and September 24, 2002, Mr. Boyer wrote to respondent requesting Mr. Smith’s file. Respondent did not provide the file.
On January 15, 2003, Mr. Boyer and Mr. Duhe filed a motion to substitute counsel of record and to compel production of Mr. Smith’s file in the personal injury |¡>suit. On or about that same day, Mr. Boyer filed a similar motion in the worker’s compensation proceeding, which matter was set for hearing on January 31, 2003. Respondent did not appear at the hearing. The judge ordered respondent to produce the file within fifteen days of the signing of the judgment on February 10, 2003. Respondent did not return the file. However, there were no documents in the suit record to show that respondent was served with notice of the hearing date or notice of the judgment.
In July 2003, Mr. Smith retained attorney Richard Guidry to represent him in the personal injury suit. On July 7, 2003, Mr. Guidry sent respondent a letter requesting Mr. Smith’s file. On July 9, 2003, Mr. Guidry filed a motion to substitute counsel, which was granted. In September 2003, he filed a motion to compel production of Mr. Smith’s file, which matter was heard on October 6, 2003. Respondent failed to appear for the hearing, despite being personally served with notice of the hearing date. On November 3, 2003, the judge signed an order requiring respondent to produce Mr. Smith’s entire file to Mr. Guidry within ten days and pay the costs and attorney’s fee incurred in the filing of the motion. Respondent again failed to return the file, despite being personally served with notice of the order.
On September 9, 2003, the ODC forwarded respondent notice of the initial complaint in this matter. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement. Despite being personally served with notice to appear for the sworn statement on December 11, 2003, respondent failed to appear.
On August 6, 2004, respondent finally delivered Mr. Smith’s file to Mr. Guidry.
Respondent stipulated that his conduct in this matter violated Rules 1.16(d) (obligations upon termination of the representation), 8.1(c) (failure to cooperate with lathe ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

The Barcia Matter

In December 2000, Angela Barcia retained respondent to represent her in a personal injury matter. At the time, respondent was located in Baton Rouge. Thereafter, he relocated to Lafayette without notifying Ms. Barcia. Ms. Barcia terminated respondent’s services and verbally requested the return of her file. Respondent failed to provide the file to her.
Thereafter, Ms. Barcia retained attorney E. Wade Shows to represent her. Mr. *648 Shows also requested that respondent return Ms. Bareia’s file. Respondent failed to comply with this request until August 6, 2004.
On April 22, 2004 and May 5, 2004, the ODC forwarded respondent notice of the initial complaint in this matter. Respondent failed to respond to the complaint, necessitating the issuance of a subpoena to obtain his sworn statement, which took place on July 27, 2004.
Respondent stipulated that his conduct in this matter violated Rules 1.16(d), 8.1(c), 8.4(a), and 8.4(g) of the Rules of Professional Conduct.

The Causey Matter

In the latter part of 2001, Christon Cau-sey hired respondent to represent her in a civil matter. On June 2, 2004, Ms. Causey made a written request for her file in order to obtain additional counsel. Respondent failed to provide the file to her.
|4On September 9, 2004, the ODC forwarded respondent notice of the initial complaint in this matter. In response to the complaint, respondent asserted that he mailed Ms. Causey’s file to her on October 6, 2004. On October 9, 2004, Ms. Causey informed the ODC that she had not received her file.
On December 15, 2004, respondent provided the ODC with a sworn statement. As of that date, Ms. Causey still had not received her file. Therefore, the ODC obtained the file on her behalf.
Respondent stipulated that his conduct in this matter violated Rules 1.16(d) and 8.4(a) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
. On April 25, 2005, the ODC filed three counts of formal charges against respondent. Respondent answered the formal charges and denied any misconduct. Thereafter, respondent and the ODC entered into a joint stipulation of facts and rule violations. In this document, respondent stipulated to the facts as alleged by the ODC and admitted that he violated the Rules of Professional Conduct as charged. In February 2006, the hearing committee conducted a hearing which was limited to the issue of mitigation.

Hearing Committee Recommendation

After considering the evidence and testimony presented at the hearing, the hearing committee accepted the rule violations as stipulated to by the parties. The committee determined that respondent knowingly, but with no intent to cause harm,[1] engaged in conduct that caused potential harm to his clients, the public, and the legal Issystem. The committee also found that respondent has made great strides in gaining control over his life, both personally and professionally, and he can therefore engage in the practice of law at this time without danger of harm to his clients, the public, or the legal system. However, oversight of respondent’s practice for a limited period of time would be extremely helpful and would prevent further harm.
Based on this reasoning, the committee recommended that respondent be suspended for nine months, with all but ninety days deferred, followed by two years of probation with the conditions that he complete Ethics School and be assigned a Practice Assistance monitor from the Louisiana State Bar Association.
*649 Neither respondent nor the ODC filed an objection to the committee’s recommendation. •

Disciplinary Board Recommendation

After review, the disciplinary board determined that the stipulated facts are not manifestly erroneous. The board also determined that respondent violated the Rules of Professional Conduct as stipulated to by the parties.
The board found that respondent knowingly violated duties owed to his clients and to the legal profession. The potential for harm was significant; however, there is no evidence in the record of actual harm to respondent’s clients beyond the delay in returning the files. According to the ABA’s Standards for Imposing Lawyer Sanctions, the baseline sanction is a period of suspension.
The board found the following aggravating factors present: multiple offenses, bad faith obstruction of the disciplinary system by intentionally failing to comply with the disciplinary investigation, and substantial experience in the practice of law (admitted 1989). In mitigation, the board found the absence of a prior disciplinary | ^record, absence of a dishonest or selfish motive, personal or emotional problems, and remorse.
In light of the lack of actual harm, the lack of a prior disciplinary record, and respondent’s personal and emotional problems, the board recommended that respondent be suspended for nine months, with all but ninety days deferred, followed by two years of supervised probation with the conditions that he complete Ethics School and be assigned a Practice Assistance monitor from the Louisiana State Bar Association. The board also recommended that respondent be assessed with all costs of these proceedings.
Neither respondent nor the ODC filed an objection to the board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. Y, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
The stipulations in this matter indicate that respondent failed to return the files of three clients upon termination of the representation and failed to cooperate with the ODC in two separate investigations. Respondent has stipulated that his conduct violated Rules 1.16(d), 8.1(c), 8.4(a), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Having found professional misconduct, the sole remaining issue presented for our consideration is the appropriate sanction for respondent’s misconduct. In imposing a sanction, we are mindful that disciplinary proceedings are designed to ^maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In acting as he did, respondent violated duties owed to his clients and to the legal profession. He acted knowingly, and the *650 potential for harm was significant. The baseline sanction is a period of suspension.
Aggravating factors are a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. In mitigation, we note that respondent has no prior disciplinary record. He also lacked a dishonest or selfish motive, suffered from personal problems during the time frame in question, and has expressed remorse.
Under all the circumstances of this case, we find that the disciplinary board’s recommendation is appropriate. Accordingly, we will suspend respondent from the practice of law for nine months, with all but ninety days deferred, followed by two years of supervised probation governed by the conditions recommended by the disciplinary board.[2] Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate.
IsDECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Michael Lea Hy-man, Louisiana Bar Roll number 19347, be suspended from the practice of law in Louisiana for a period of nine months. It is further ordered that all but ninety days of the suspension shall be deferred. Following the active portion of the suspension, respondent shall be placed on two years of supervised probation governed by the conditions recommended by the board. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The committee determined that the root cause of respondent's misconduct was his abrupt separation from his wife and the ensuing divorce and custody issues. The acrimony existing between respondent and his estranged wife caused his law practice to fall into disarray. He is also the father of triplet daughters, who are in his care approximately one-half of the time.

. The two-year probationary period shall commence from the date petitioner, the ODC, and the probation monitor execute a formal probation plan.