996 So.2d 1020 (2008)
In re Henry H. HOBGOOD.
No. 2008-B-1565.
Supreme Court of Louisiana.
December 2, 2008.
*1021 Charles Bennett Plattsmier, Baton Rouge, for applicant.
Henry Herbert Hobgood, for respondent.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Henry H. Hobgood, an attorney licensed to practice law in Louisiana but currently on interim suspension pursuant to a joint motion of the parties filed in January 2006. In re: Hobgood, 06-0140 (La.1/25/06), 919 So.2d 722.

UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed two sets of formal charges against respondent, consisting of a *1022 total of nine counts of misconduct. The two sets of formal charges were considered separately but by the same hearing committee, then consolidated by the disciplinary board. After considering the consolidated matters, the board filed in this court a single recommendation of discipline encompassing both sets of formal charges.

06-DB-046

Count II-The Pender Matter
In early 2001, respondent left his nearly ten-year employment as an associate with a law firm to begin a solo practice. Respondent secured a line of credit from Bank One and borrowed funds against the line that he failed to repay. After Bank One filed suit against respondent, he approached a client, Wayne Pender, and requested that Mr. Pender loan him $20,000. Mr. Pender agreed to do so, and respondent subsequently paid these funds to Bank One in settlement of his debt. However, respondent failed to advise Mr. Pender to consult independent counsel regarding the loan.
The ODC alleges that respondent's conduct violated Rule 1.8(a) (conflict of interest) of the Rules of Professional Conduct.

Count II  The Succession Matter
When his wife's great aunt passed away, respondent was retained by her collateral heirs, who made a claim to her estate. Respondent negotiated settlements on behalf of the heirs, and in early 2003, he placed the funds into his client trust account for distribution to the heirs. Respondent converted $71,250 of the funds to his own use. Billie Sneed Apple, respondent's mother-in-law, subsequently loaned him $45,000 to repay a portion of this amount.
The ODC alleges that respondent's conduct violated Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct.

Count II  The West Matter
In early 2004, respondent assisted Connie West and Michael West with their community property dispute by placing approximately $25,000 of their money into his client trust account until they could decide how to split the funds between them. Shortly thereafter, respondent converted the funds to his own use.
The ODC alleges that respondent's conduct violated Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Count IV  The Warner Matter
In mid 2004, Cynthia Warner and Dr. Bill Weirick hired respondent to perform a loan closing on a refinance of Ms. Warner's residence. Numerous credit cards were to be paid off at the time of the closing. Thus, respondent was instructed to retain approximately $9,000 of the loan proceeds in his client trust account pending successful reduction of the credit card debt. Shortly after receiving Ms. Warner's funds, respondent converted the $9,000 to his own use.
The ODC alleges that respondent's conduct violated Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Count V  The Walker Matter
In the summer of 2004, Mark and Kathy Walker hired respondent to assist them in refinancing their credit card debt. The refinance generated equity cash of approximately $8,000, which respondent was to hold in his client trust account while he attempted to reduce or settle the claims of *1023 the Walkers' creditors. Instead, respondent converted the $8,000 to his own use.
The ODC alleges that respondent's conduct violated Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Count VI  The Watters Matter
In June 2005, respondent closed on the sale of property belonging to his client Troy Watters. The sale generated $32,000, which respondent was to use to pay off a mortgage balance owed to Regions Bank. Instead, respondent converted some of the funds to his own use. When Mr. Watters contacted respondent about why the mortgage had not been paid, he issued a $32,000 check to Regions Bank; however, there were not sufficient funds in the account to cover the check. Respondent later stopped payment on the check. Regions Bank then contacted respondent regarding the stop payment, and so respondent issued a $32,000 check from his client trust account, which also had insufficient funds. Nevertheless, his bank, Cross Keys Bank, honored the check, which created a $15,000 overdraft in his client trust account.
The ODC alleges that respondent's conduct violated Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Count VII  The Ross Matter
In the summer of 2004, Mr. and Mrs. Robert Ross hired respondent to represent them in a property matter. They paid respondent $2,000 as an advance deposit against his future fees and $200 as payment of filing fees in connection with the lawsuit he was to file on their behalf. Respondent immediately converted the $200 to his own use and consumed the $2,000 without placing same in his client trust account.
In August 2004, respondent filed the lawsuit on behalf of Mr. and Mrs. Ross but failed to pay the necessary filing fees. Thus, the defendant was never served with the suit. Respondent failed to inform his clients of the status of the suit despite their repeated efforts at communication. On at least one occasion, respondent misled Mr. and Mrs. Ross into believing the suit had been served and a preliminary default would soon be entered because the defendant did not answer the suit.
Respondent failed to respond to the ODC's notice of Mr. and Mrs. Ross' complaint against him, necessitating the issuance of a subpoena to take his sworn statement.
The ODC alleges that respondent's conduct violated Rules 1.4 (failure to communicate with a client), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

Joint Stipulation of Facts
Prior to the hearing on the formal charges, respondent and the ODC entered into a joint stipulation of facts, as follows:
1. Each and every allegation of fact as set forth in Count I, including the rule violations alleged are stipulated to by respondent and the ODC save and except that, regarding Mr. Pender, respondent asked Mr. Pender to look around for loans from others who may be willing to assist him during his period of financial need. Mr. Pender later loaned funds personally to respondent. Mr. Pender has now been paid in full with interest.
2. All of the factual allegations contained in Count II are fully accurate and true as well as the rule violations set forth. The parties further stipulate that Ms. Apple has, since the filing of the formal charges, been repaid and respondent shall furnish documentary proof and evidence of *1024 repayment at the time of the hearing. The balance of funds owed to others as set forth in Count II, as of the date of this stipulation, have not been repaid by respondent.
3. All of the factual allegations set forth in Count III are true and accurate, and respondent acknowledges the rule violations as set forth therein. The parties further stipulate that Connie Pierce West, Ray Pierce, and Michael West have each been paid in accordance with the judgment of the court directing how the funds at issue were to be disbursed.
4. The parties stipulate that all of the factual allegations contained in Count IV are true and accurate as are the rule violations alleged therein save and except that the amount retained by respondent was, in fact, the sum of $12,000. The parties further stipulate that when respondent recently sold his home, proceeds from that sale were used to pay back the sum of $9,300 and, in exchange for receipt of that sum, the parties from whom the funds were taken agreed to release the mortgage on respondent's home. The balance of $2,700 remains due and owing and is unsecured.
5. All of the factual allegations in Count V are accurate and true as are the allegations of rule violations as set forth therein. The parties stipulate that Mark and Kathy Walker have been repaid.
6. The parties agree and stipulate that all of the factual allegations contained in Count VI are true and accurate as are the rule violations that are set forth. The parties further stipulate that Cross Keys Bank has been paid in full.
7. The parties stipulate that all of the allegations of fact as set forth in Count VII are true and accurate as are the rule violations alleged. Further, the parties stipulate that respondent's failure to respond to the ODC's request for reply to the original complaint may have been a result of mis-communication between respondent and his then attorney.
8. The parties stipulate and agree that these stipulations shall supersede respondent's answer filed in these proceedings. Respondent will introduce no evidence at the hearing to elicit facts contrary to those set forth in the formal charges and as stipulated to herein and that, at this time, respondent intends to call only himself as a witness to offer testimony in mitigation.
9. The parties stipulate that respondent has no prior disciplinary record, that the restitution as identified hereinabove and as supported by documentary evidence to be provided to the hearing committee at the time of the hearing has been made, that respondent has been cooperative in his efforts with the ODC, and that respondent has demonstrated genuine remorse. The parties further stipulate that there was a pattern of misconduct, multiple offenses occurred, there were multiple victims, and respondent has substantial experience in the practice of law.

Formal Hearing
A formal hearing was conducted in 06-DB-046 in November 2006. Both respondent and the ODC introduced documentary evidence at the hearing. Respondent provided four character letters, all of which urged the hearing committee not to impose permanent disbarment. He also *1025 provided a letter from the complainants in the West matter, who expressed their support of respondent. He further provided documentation showing he had made restitution as follows: $22,000 to Wayne Pender on July 17, 2006; $43,700 to certain heirs in the succession matter on August 14, 2006; $12,231 to Michael West on January 17, 2006; $9,376.63 to Ray Pierce (Connie West's father) on January 18, 2006; $8,946.48 to Cynthia Warner and William Weirick on July 17, 2006; $9,395 to Mark Walker in January 2006; and $18,160.19 to Cross Keys Bank on January 18, 2006.
The ODC called no witnesses at the hearing. Respondent testified on his own behalf and on cross-examination by the ODC.

Hearing Committee Report
After considering the evidence and testimony presented at the hearing, the hearing committee accepted the facts as presented in the formal charges and modified by the stipulation of facts. Accordingly, the committee found that respondent violated the Rules of Professional Conduct as alleged in the formal charges.
Respondent testified that his actions were due to severe financial pressure and that he used the converted funds to pay his living expenses. His actions took place during a time of extreme emotional pressure due to the breakup of his marriage and his wife and children moving away. He stated that he was significantly depressed and that his wife is undergoing treatment for breast cancer. He testified that most of the converted funds had been repaid through the sale of his farm and home and that he still intended to repay the rest of the converted funds. He also indicated that he self-reported to the ODC, fully cooperated with the disciplinary investigation, and took a voluntary interim suspension.
Aggravating factors found by the committee are multiple offenses and substantial experience in the practice of law (admitted 1986). In mitigation, the committee found the following factors: absence of a prior disciplinary record, personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the disciplinary proceeding, and remorse. The committee also acknowledged that restitution has been made to most of the victims and respondent has agreed to make full restitution.
The committee recognized disbarment as the baseline sanction, and determined that Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines applies. However, based on the mitigating factors present, especially respondent's remorse, the committee recommended that ordinary disbarment be imposed. The committee further recommended that respondent seek counseling for his significant depression and that he make complete restitution to his clients.
The ODC objected to the hearing committee's recommended sanction, arguing that permanent disbarment is warranted.

07-DB-012

Counts I & II  The Dage Matter
Respondent represented Larry and Kathy Dage in a lawsuit arising out of their purchase of a building with a defective roof. After a trial, the trial court ruled in the Dages' favor, but respondent failed to inform his clients of the verdict. The defendants appealed, and respondent again failed to inform his clients. Furthermore, respondent did not answer the appeal, did not file a brief, and did not appear for oral argument. When the court of appeal reversed *1026 the trial court's ruling, respondent neither informed his clients of that fact nor sought supervisory review of the court of appeal's judgment.
The Dages also hired respondent to represent them in a personal injury and property damage matter. Respondent settled the claims and advised Mrs. Dage that he would withhold his fee and costs, pay third-party healthcare providers, and disburse at least $2,000 to her as her portion of the settlement. Respondent did not communicate further with the Dages and did not disburse the $2,000 to them. When the Dages filed a disciplinary complaint against respondent, he informed the ODC that he had converted the $2,000 to his own use. He indicated that he paid all third-party healthcare providers. However, there remains an outstanding balance of $172 owed to American Radiological Services for Mrs. Dage's treatment, which amount was to have been paid from the settlement proceeds.
When respondent was placed on interim suspension in January 2006, he failed to return the Dages' files to them as required by Supreme Court Rule XIX, § 26.
The ODC alleges that respondent's conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4, 8.4(a), 8.4(b), 8.4(c), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent answered the formal charges and admitted his misconduct.

Formal Hearing
A formal hearing was conducted in 07-DB-012 in June 2007. The ODC introduced documentary evidence at the hearing and called Kathy Dage and Larry Dage to testify before the committee. Respondent testified on his own behalf and on cross-examination by the ODC, indicating that he stipulates to the factual allegations and rule violations as stated in the formal charges but does not agree to the imposition of permanent disbarment.

Hearing Committee Report
After considering the evidence and testimony presented at the hearing, the hearing committee found that respondent admitted the charges made by the ODC. Accordingly, the committee found that respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee further noted that other than remorse, the mitigating factors present in 06-DB-046 do not appear to be present in this matter.
Based on these findings and relying on Guideline 1 of the permanent disbarment guidelines, the committee recommended that respondent be permanently disbarred.
Respondent objected to the hearing committee's recommendation, arguing that permanent disbarment is not warranted based on the mitigating factors present.

Disciplinary Board Recommendation

06-DB-046 & 07-DB-012
After review, the disciplinary board determined that the hearing committee's factual findings are not manifestly erroneous and adopted same. The board also determined that respondent violated the Rules of Professional Conduct as alleged in both sets of the formal charges, except that respondent did not violate Rule 8.1(c) as alleged in Count VII of 06-DB-046 because the parties stipulated that his failure to respond to the ODC's request for a reply to the complaint may have been due to miscommunication between respondent and his then attorney.
In 06-DB-046, respondent borrowed money from a client without first advising him to obtain independent legal advice. Respondent also converted family members' inheritances, failed to distribute proceeds from the sale of property to his *1027 clients, failed to use client funds to pay off their debts, failed to deposit an advance fee into his client trust account, and failed to pursue a property dispute.
In 07-DB-012, respondent failed to pursue the Dages' favorable judgment on appeal, resulting in a loss of the damages they won at trial. He also settled their personal injury matter but failed to distribute approximately $2,000 to them and $172 to a third-party medical provider.
Based on these findings, the board determined that respondent violated duties owed to his clients, the public, the profession, and the legal system. He acted knowingly and/or intentionally. Relying upon the ABA's Standards for Imposing Lawyer Sanctions, the board determined that the baseline sanction is disbarment.
As aggravating factors, the board found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and illegal conduct. In mitigation, the board found the following factors are applicable: absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the disciplinary proceeding, character or reputation, and remorse.
The board determined that respondent's misconduct fits Guideline 1 of the permanent disbarment guidelines because it involves conversion of client funds. However, the board also noted that respondent has made "significant steps towards restitution." Given the extensive mitigating factors present, the board recommended that respondent be disbarred. The board also recommended that respondent continue to make complete restitution.
The ODC filed an objection to the disciplinary board's recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).[1]

DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La. 11/30/94), 646 So.2d 343; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La. 1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent has admitted converting client funds on numerous occasions. His misuse of client funds can be described as nothing less than intentional. In addition, he has neglected legal matters and misled his clients as to the status of their cases. This conduct is clearly in violation of the Rules of Professional Conduct.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high *1028 standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
The baseline sanction for respondent's misconduct is unquestionably disbarment. The sole remaining issue is whether the misconduct is so egregious that respondent should be permanently precluded from seeking readmission to the practice of law.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines depicting conduct that might warrant permanent disbarment. Guideline 1 states that permanent disbarment may be warranted in matters involving repeated or multiple instances of intentional conversion of client funds with substantial harm. Clearly, respondent's conduct falls within this guideline. Respondent intentionally converted more than $150,000 from multiple clients, resulting in great harm to those persons. Respondent made restitution to some of his victims in 2006, after the institution of disciplinary proceedings, but thereafter he made no further attempts at restitution.
Respondent's pattern of intentional misconduct is indicative of his lack of regard for his clients and for his duties as an attorney. To protect the public, we cannot allow respondent the opportunity to return to the practice of law in the future. Accordingly, we will impose permanent disbarment.

DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, the brief filed by the ODC, and oral argument, it is ordered that the name of Henry Herbert Hobgood, Louisiana Bar Roll number 17613, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent shall make full restitution to all persons subject of the formal charges. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., dissenting and assigning reasons.
While there is no doubt that Respondent converted clients' funds, he has made significant steps toward restitution. Respondent presented evidence which proved that restitution has been made to most of the victims, and Respondent has agreed to make complete restitution to other clients. The record includes sufficient mitigating evidence. Respondent sold his house and farm in order to pay restitution. Given Respondent's extensive mitigating factors, especially restitution, no prior disciplinary actions, self-reporting, his personal and emotional problems, along with full cooperation with the disciplinary process, and Respondent's demonstration of genuine remorse, permanent disbarment is not warranted. Based on the above mitigating factors, Respondent should be disbarred, but not permanently precluded from seeking readmission to the practice of law.
NOTES
[1] Prior to oral argument, respondent sent a letter to the court waiving his appearance and re-urging the arguments he had made throughout these proceedings. Respondent did not file a brief.